Argued and submitted January 28, reversed June 9, 2004

Stephen Lester JONES,
*Respondent,*

*v.*

Paula Kaye LINDSEY,
*Appellant.*

02-2311; A119865

91 P3d 781

Lorena Reynolds argued the cause and filed the briefs for appellant.

Chelsea D. Lario argued the cause for respondent. With her on the brief was Edward L. Daniels.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Respondent appeals from a judgment granting petitioner's requested permanent stalking protective order (SPO).[1] *See* ORS 30.866.[2] The sole issue on appeal is the adequacy of the evidence to support issuance of the SPO. We review the facts *de novo*, *Hanzo v. deParrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), giving deference to the trial court's express and implicit credibility determinations. We reverse.

The parties formerly were married. They separated in March 2000, and their marriage was dissolved in June 2002. They have two minor children. Respondent has custody of the children, and petitioner has parenting time with them. Petitioner filed for an SPO on October 1, 2002, less than a week after a hearing that resulted in an order upholding respondent's Family Abuse Prevention Act (FAPA) restraining order against petitioner. In his petition for an SPO, petitioner alleged that ten incidents supported his need for protection from respondent. The trial court entered a temporary SPO on October 1. The temporary order required respondent to appear before the court on October 11. Both parties appeared before the court on October 11, and the matter was set for a contested evidentiary hearing on October 25. At the evidentiary hearing, petitioner testified about an additional incident that was not mentioned in the petition. Respondent did not object to the evidence concerning that incident. However, evidence was adduced at the hearing regarding only eight of the 11 allegedly unwanted contacts by petitioner. After hearing the evidence, the trial court entered a permanent SPO. Respondent appeals from that order.

■ At the outset, the parties disagree as to the scope of the evidentiary record before us. Petitioner argues that the record includes the allegations in his petition, specifically,

---

[1] All references in this opinion to respondent are to Lindsey and all references to petitioner are to Jones. ORAP 5.15 (on appeal, parties are referred to as designated before the trial court).

[2] Because the judgment was entered on October 25, 2002, the amendments to ORS 19.205 and ORS 19.415 are inapplicable to this case. Or Laws 2003, ch 576, §§ 85, 88, 90a; *see also* ORS 171.022.

those pertaining to the three incidents as to which he offered no evidence at the hearing.[3] Respondent asserts that the evidentiary record is limited to the evidence received at the contested hearing. We agree with respondent.

ORS 30.866(1) provides that a proceeding for the issuance of an SPO is a "civil action." "[E]xcept where a different procedure is specified by statute or rule," the procedure in civil actions is governed by the Oregon Rules of Civil Procedure (ORCP). ORCP 1 A. Pleadings are "the written statements by the parties of the facts constituting their respective claims and defenses." ORCP 13 A. Thus, pleadings frame the issues to be tried in a civil action. ORCP 51 A. However, unless admitted, the factual allegations in pleadings have no evidentiary effect. *See, e.g.*, *Smith v. Urich*, 151 Or App 40, 46, 947 P2d 1125 (1997) (stating that allegations in the plaintiff's complaint "that there was a defect in the sidewalk and that * * * the defect caused his injuries is not evidence" of those facts). Thus, for example,

"[w]hen a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits, declarations or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

ORCP 47 D; *see also* ORCP 59 C(2) (providing that "[p]leadings shall not go to the jury room").

As noted, ORCP 1 A provides that the Oregon Rules of Civil Procedure do not apply where a "different procedure is specified by statute or rule." However, nothing in ORS 30.866 suggests that the legislature intended to treat the factual allegations in SPO petitions differently from the factual allegations in pleadings in other types of civil actions. ORS 30.866(2) contemplates that an evidentiary hearing will be held before a final SPO is entered. In addition, ORS 30.866(7)

---

[3] We noted, but did not decide, the issue in *Cress v. Cress*, 175 Or App 599, 601 n 1, 29 P3d 1169 (2001).

provides that "[p]roof of the claim shall be by a preponderance of the evidence." The distinction in that provision between "claims" and "evidence" is consistent with the principle that pleadings themselves are not evidence. Accordingly, we conclude that, unless admitted by the adverse party, the factual allegations in an SPO petition do not constitute evidence in such an action.

In this case, respondent contested the allegations in the petition. That decision put petitioner to his proof. We therefore disregard the allegations in the petition as to which petitioner offered no evidence at the hearing. We now briefly detail the record concerning the incidents upon which petitioner produced evidence at the hearing.

■    First, petitioner alleged in the petition that, in October 2000, respondent walked into petitioner's house, pulled the phone line out of the wall, and punched and kicked him. Petitioner stated that he then pushed respondent away, whereupon, in the presence of the children, respondent "grabbed a butcher knife," swung it at him, and cut his hand. Respondent testified that petitioner had shoved her down and abused her during the incident. However, neither party reported the incident to the police until petitioner did so weeks later, and neither party was arrested or prosecuted in connection with it.

At the hearing, it became clear that petitioner could not testify with certainty that the knife incident occurred within two years before the SPO petition was filed, that is, within two years of October 1, 2002. Although petitioner initially testified that the incident occurred in October 2000, after being confronted with his statements in a police report and deposition that the incident occurred in September 2000, petitioner testified that he was not sure when it actually happened. Thereafter, when respondent attempted to testify that she had not attacked petitioner with the knife, the trial court stated, "Okay. And we're not trying the knife incident and I understand that." The knife incident is the only one in which a weapon allegedly was used or any physical injury allegedly occurred during the course of an altercation between the parties.

Second, petitioner testified that he called the police to his home on three occasions in October 2000 because respondent was present and would not leave. According to petitioner, respondent entered his house on those occasions and took personal property.

Third, petitioner testified that, on January 25, 2001, respondent went to petitioner's work place and left a message for him. Petitioner was not present at the time.

Fourth, in November 2001, respondent went to petitioner's home and rummaged through a garbage can in the driveway. When she saw petitioner, respondent got into her car and left the premises. After that incident occurred, a police officer told respondent to stay away from petitioner's home.

Fifth, in his petition, petitioner alleged that respondent came to his property on August 5, 2002, asked to borrow money, refused to leave, and told him that she could enter his home whenever she wanted. At the hearing, petitioner testified that respondent came to his house on that date. However, petitioner adduced no other evidence at the hearing concerning that incident.

Sixth, respondent came to petitioner's home on September 17, 2002. However, petitioner was not at home. Respondent testified that, on that occasion, she spoke with petitioner's girlfriend about dental care for the parties' daughter. According to respondent, she and petitioner's girlfriend had a "great conversation." Petitioner's girlfriend did not testify at the hearing. Petitioner later called the police, but the investigating officer took no legal action against respondent.

Seventh, petitioner alleged in his petition that respondent had driven by his house on numerous occasions, including driving down the alley behind his house on September 24, 2002. At the hearing, petitioner's neighbor testified that respondent often drove down the alley but, when pressed, he stated that he had seen her "twice in the last six months." There was no evidence that respondent stopped her car on any such occasion.

Eighth, petitioner testified at the hearing that respondent had "threatened" him on other occasions by stating that she could get into his house and take property. According to petitioner, these contacts caused him "a little bit of alarm."

In conducting our *de novo* review, we consider the described incidents in the context of the parties' relationship during the two-year period in which they occurred. *Boyd v. Essin*, 170 Or App 509, 518, 12 P3d 1003 (2000), *rev den*, 331 Or 674 (2001). Throughout that period, petitioner and respondent had regular contact. In fact, petitioner initiated some of it. The parties attended a birthday party and a parent-teacher conference together, they ate together, they met to discuss the problems that petitioner was having with their son, they discussed parenting time arrangements, and they had numerous other voluntary contacts.

ORS 30.866(1) provides that a court may issue an SPO against another person under the following circumstances:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

ORS 163.730(1) defines "alarm" as "apprehension or fear resulting from the perception of danger." ORS 163.730(2) defines "coerce" as "to restrain, compel, or dominate by force or threat."

In *State v. Rangel*, 328 Or 294, 302-04, 977 P2d 379 (1999), the Supreme Court held that, if contacts are expressive in nature, Article I, section 8, of the Oregon Constitution requires that the person requesting the SPO must establish three additional facts: (1) The contact communicates a threat

that "instills in the addressee a fear of imminent and serious personal violence"; (2) the threat is "unequivocal"; and (3) the threat is "objectively likely to be followed by unlawful acts." *Id.* at 303 (citing *State v. Moyle,* 299 Or 691, 703-05, 705 P2d 740 (1985)). The court explained that the kinds of threatening contacts that may support the issuance of an SPO do not include " 'the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.' " *Rangel,* 328 Or at 303 (quoting *Moyle,* 299 Or at 705).

In this case, only one incident occurred between the parties that involved a physical altercation. The record indicates that that incident occurred more than two years before the petition was filed and, therefore, cannot be counted as one of the two or more unwanted contacts required by the statute. ORS 30.866(6). Moreover, any alarm that it may have caused cannot be the sole basis of the alarm required for the issuance of the SPO. *Schiffner v. Banks,* 177 Or App 86, 96-97, 33 P3d 701 (2001). At most, the incident could be considered in determining whether respondent's subsequent conduct during the two-year period "might * * * take on a different character when viewed * * * against the backdrop of [previous] assaultive behavior * * *." *Boyd,* 170 Or App at 518.

This is not a straightforward case in which there is no ongoing relationship between the parties. Throughout the two-year period at issue, petitioner and respondent were in the midst and aftermath of contentious dissolution proceedings while trying to coparent two children, one of whom was having problems in his relationship with petitioner. There is lacking any evidence of repeated and unwanted contact by respondent during that period that reasonably caused petitioner alarm or coerced him. Moreover, as to those contacts that were purely expressive, there is a complete absence of evidence of an "unequivocal" threat that instilled in petitioner an objectively reasonable fear of imminent and serious personal violence. We conclude that the trial court erred in issuing the SPO.

Reversed.