Submitted on record and brief December 15, 2006, reversed February 28, 2007

## Heather Jane JENNINGS,
*Petitioner-Respondent,*

*v.*

## Ben Craig GIFFORD,
*Respondent-Appellant.*

Marion County Circuit Court
06C11233; A131728

154 P3d 163

Juliet M. Bates filed the brief for appellant.

No appearance for respondent.

Before Landau, Presiding Judge, and Wollheim, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Respondent appeals a stalking protective order restraining him from contacting petitioner's daughter. He contends that the trial court erred in entering the order without a sufficient factual basis to support it. On *de novo* review, *Habrat v. Milligan*, 208 Or App 229, 231, 145 P3d 180 (2006), we agree and reverse.

Petitioner's daughter, N, and respondent began dating when they both were in high school. They broke up in the summer of 2005, after respondent had graduated. N, who is three years younger than respondent, was 16 years old at the time and still a high school student. After the relationship ended, the two stayed in contact for some time. Later that fall, however, N attempted to break off all contact with respondent. Respondent resisted N's attempts to break off contact. He made repeated attempts to call N, who did not answer the phone. Respondent also made frequent calls to N's friends, inquiring where she was and what she was doing. N told respondent to stop making the phone calls, but he continued to try to contact her.

In November 2005, respondent sent several text messages to N in which he referred to her as a "hypocritical bitch" and told her to "go to hell." N was frightened by the text messages. She showed them to her parents. N's father called respondent and left a voice mail message in which he told respondent to stop "harass[ing]" and "intimidating" his daughter. Respondent stopped calling for a little over a month. Near Christmas, respondent left more messages for N, in which he apologized for his earlier behavior but persisted in inquiring as to why their relationship had ended.

At some unspecified time during this period, respondent attended a high school play at which N was working. Respondent, who also had been active in the theater as a high school student, did not attempt to contact N during that event.

In January 2006, respondent and a friend came to N's school. N saw respondent in the hallway and she became frightened and upset. N testified that respondent asked her

friends if she was present. She went to another part of the building with some friends and hid. Respondent then appeared in that part of the building. N became increasingly afraid and asked a friend to take her from school to her workplace. N left without coming into direct contact with respondent.

After N told petitioner about the incident at the school, petitioner filed a stalking complaint with the Silverton Police Department. A show cause hearing was held in March 2006. At the close of the hearing, on the basis of the facts described above, the trial court granted a stalking protective order prohibiting respondent from any further contact with N.

■ On appeal, respondent contends that the court erred in entering the stalking protective order because the evidence does not show that he intentionally, knowingly, or recklessly engaged in two or more unwanted contacts that actually alarmed petitioner and that reasonably put her in fear of her personal safety. We agree.

■■ Under ORS 163.738(2)(a)(B), a court may enter a stalking protective order if:

"(i) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(ii) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(iii) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

To violate the statute, the person making the unwanted contacts must act with a culpable mental state—intentionally, knowingly, or recklessly—and the contacts must be repeated. Thus, to obtain a stalking protective order, a petitioner must establish, at a minimum, that, *on at least two occasions*, the person contacted the petitioner while subjectively "aware of a substantial and unjustifiable risk" that the contact was

"unwanted by the recipient, and then consciously and unreasonably disregard that risk." *Delgado v. Souders,* 334 Or 122, 133, 46 P3d 729 (2002).

 Under Article I, section 8, of the Oregon Constitution, unwanted contacts that involve speech are subject to a heightened standard of proof. To qualify as a predicate unwanted contact, any contact that involves speech must be a threat—that is, the sort of communication that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel,* 328 Or 294, 303, 977 P2d 379 (1999). The kinds of threatening contacts that may support the issuance of a stalking protective order do not include " 'the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.' " *Id.* (quoting *State v. Moyle,* 299 Or 691, 705, 705 P2d 740 (1985)).

Turning to the facts of this case, we first consider the repeated telephone calls and text messages that petitioner left in the fall of 2005. Those contacts involve speech only and therefore are subject to the heightened standard enunciated in *Rangel.* Respondent's repeated attempts to reach N by telephone were doubtlessly annoying, but the testimony at the hearing does not show that N was alarmed or coerced by those calls, much less that she felt imminently threatened by them. N maintained that the subsequent text messages alarmed her. As we have noted, N testified that respondent's messages referred to her as a "hypocritical bitch" and told her to "go to hell." There is, however, no other evidence as to the content of the messages. In particular, there was no evidence of an "unequivocal" threat that instilled in petitioner an objectively reasonable fear of imminent and serious personal violence. Under *Rangel,* therefore, none of those messages constituted predicate unwanted contacts for purposes of ORS 163.738(2)(a)(B).

Apart from the phone calls and text messages, the record contains evidence of only two other contacts: respondent's attendance at the school play and the incident in January in which respondent visited N's school. With respect

to the former, however, there is no evidence that, when respondent attended the play, he was aware that N was there, nor that N had been alarmed by his presence. With respect to the January incident, it is quite clear that N was alarmed. Whether the evidence establishes that respondent acted with the requisite mental state is not so clear. In any event, issuance of a stalking protective order was not warranted under the statute. In order to justify the issuance of the stalking protective order, there must be *repeated* unwanted contacts, that is, more than one incident which qualifies as a contact for purposes of ORS 163.738(2)(a)(B). Even assuming that the incident at the school met the operative criteria, that single contact would not be enough to justify the issuance of a stalking protective order.

Reversed.