Argued and submitted May 27, reversed July 28, 2010

Morgan FALKENSTEIN,
*Petitioner-Respondent,*

*v.*

Kory FALKENSTEIN,
*Respondent-Appellant.*

Lane County Circuit Court
180828029; A141251

236 P3d 798

Jesse Wm. Barton argued the cause for appellant. With him on the brief were Hubert Duvall, Jr., and Duvall Law Office P.C.

No appearance for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Petitioner filed a petition in the trial court for a stalking protective order (SPO) against respondent, her ex-husband. The court entered a temporary SPO and set a hearing to determine whether to continue the temporary SPO. After the hearing, the court entered a final SPO of unlimited duration. On appeal, respondent argues that the final SPO was not supported by sufficient evidence. On *de novo* review, ORS 19.415(3) (2007),[1] we agree and reverse.

■    Civil SPOs are governed by ORS 30.866. To obtain an SPO, a person files a petition in a circuit court. ORS 30.866(1). If probable cause for the SPO exists, the court enters a temporary SPO, sets a hearing to determine whether the temporary SPO should be continued, and issues an order for the respondent to appear at the hearing. ORS 30.866(2). In order for a temporary SPO to be continued, the petitioner must prove, by a preponderance of the evidence, that the requirements for the SPO have been satisfied. ORS 30.866(7).

As noted, respondent argues that there was insufficient evidence to support the final SPO. In order to evaluate the sufficiency of the evidence in this case, we must first determine what information was actually admitted into evidence. Specifically, we must determine whether the factual allegations in petitioner's SPO petition were in evidence. Respondent argues that they were not. But the trial court proceeded as if they were.

To determine what information was actually admitted into evidence and, from there, to determine whether that evidence was sufficient, it is necessary to recount what happened at the SPO hearing in some detail. At the hearing, both petitioner and respondent appeared without counsel. Perhaps in part because of that, the court assumed an active role

---

[1] In *Hanzo v. deParrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), we held that SPOs are "decrees in a suit in equity" and, therefore, were subject to *de novo* review under ORS 19.415, which, at the time, provided for *de novo* review in equity cases. A 2009 amendment to ORS 19.415(3) made *de novo* review in equity cases discretionary (with an exception inapplicable to this case). Or Laws 2009, ch 231, § 2. But, because the notice of appeal in this case was filed before the effective date of the amendment, *de novo* review is required.

in creating the evidentiary record. The hearing did not proceed like a traditional adversarial hearing, with each party presenting his or her own evidence, subject to objection and examination by the other party. Instead, the court determined the order of the presentation of witnesses and questioned them. And, as its questions demonstrate, the court presumed that the factual allegations in the petition for the SPO were in evidence.

The court began the hearing by telling petitioner that it had read the petition and asking her if she had "anything [she] want[ed] to add to this recitation of facts." Petitioner testified that, on one occasion after the temporary SPO was entered, she went to her mother's house, which was a few houses away from where respondent lived at the time, and respondent sat outside his house while she was there and came over as she was leaving. Petitioner was with her mother and brother. She assumed respondent wanted to talk with her, but she left with her brother, and respondent spoke only to her mother. When petitioner later returned to her mother's house, respondent came over again, but petitioner "[didn't] know if he just didn't see me or what happened."

Petitioner also testified that, after the temporary SPO was entered, respondent sent her a text message and telephoned her. She did not testify as to the content of the text message or the telephone calls.

Regarding petitioner's reactions to respondent's actions, the court said, "You described events in your petition that you said frightened you. Are you still frightened of him?" Petitioner testified that she was.

The court then questioned respondent, who testified that he had "taken all the right measures not to speak to [petitioner]." He testified that he had moved, changed his telephone number, and changed his e-mail address. He denied having any unwanted contact with petitioner. He said he "agree[d] with [petitioner] on the fact that we want nothing to do with each other."

The court asked respondent if he had read the petition. When respondent said that he had, the court asked him

to respond to it, noting that "[petitioner] makes some particular allegations of fact in there." Respondent said that the petition contained one true allegation: that he had written down petitioner's boyfriend's license plate number.

Petitioner's boyfriend testified at the hearing. He reported that respondent had made numerous unwanted telephone calls to petitioner, waited outside her house, and come over uninvited. He testified that the text message petitioner received from respondent after the temporary SPO was entered "just said 'T'" and it "[s]eemed like somebody was going to text something and then decided against it or whatever but it still went through." He also testified that petitioner was frightened of respondent.

As is apparent from its questioning of petitioner and respondent, the court presumed that the factual allegations in the petition were in evidence. The court asked petitioner if she had anything to add to the allegations and asked respondent to address them. But, the factual allegations in the petition were not in evidence. As we held in *Jones v. Lindsey*, 193 Or App 674, 677, 91 P3d 781 (2004), an SPO hearing is a "civil action" and the Oregon Rules of Civil Procedure apply. Under those rules, pleadings—including petitions in SPO cases— are not evidence. *Id.* ("[U]nless admitted, the factual allegations in pleadings have no evidentiary effect."); *see also* ORCP 59 C(2) (providing that "[p]leadings shall not go to the jury room").

In *Jones*, the petitioner filed an SPO petition alleging 10 unwanted contacts by the respondent, his ex-wife. At the SPO hearing, the petitioner presented evidence regarding only seven of those contacts. On appeal, the respondent argued that the evidentiary record was limited to the evidence received at the hearing and did not include information regarding the three contacts as to which the petitioner offered no evidence at the hearing. We agreed, concluding that, "unless admitted by the adverse party, the factual allegations in an SPO petition do not constitute evidence in such an action." 193 Or App at 678. Because the respondent did not admit the three contacts and the petitioner did not present any evidence regarding them, they could not serve as bases for the SPO. *Id.* We had to "disregard" them when

determining whether there was sufficient evidence to support the SPO. *Id.*

Accordingly, the evidentiary record in this case is limited to the evidence received at the SPO hearing. It does not include the factual allegations in the petition, except the one allegation that respondent admitted—namely, that he ran petitioner's boyfriend's license plate number.[2]

Thus, the question in this case becomes whether the evidence received at the SPO hearing was sufficient to support the SPO. As noted, civil SPOs are governed by ORS 30.866. In order to obtain an SPO under ORS 30.866, a petitioner must establish, by a preponderance of the evidence, that: (1) the respondent intentionally, knowingly, or recklessly engaged in repeated and unwanted contacts with the petitioner or members of the petitioner's household or immediate family; (2) the contacts alarmed or coerced the petitioner; (3) the petitioner's alarm or coercion was objectively reasonable; (4) the contacts caused the petitioner apprehension regarding the petitioner's own personal safety or that of a member of the petitioner's immediate family or household; and (5) the petitioner's apprehension was objectively reasonable. ORS 30.866(1); *McGinnis-Aitken v. Bronson*, 235 Or App 189, 192, 230 P3d 935 (2010). To serve as predicate contacts for an SPO, the contacts must have occurred within two years of the filing of the SPO petition. ORS 30.866(6).

Terms used in ORS 30.866 are defined by ORS 163.730. "Repeated" means "two or more times." ORS 163.730(7). "Contact" includes, among other things, "[w]aiting outside the home * * * of the other person or of a member of that person's family or household," "[s]ending or making written or electronic communications in any form to the other person," and "[s]peaking with the other person by any means." ORS 163.730(3)(c)-(e). "Alarm" means

---

[2] The trial court may have believed that it could receive the petition as an exhibit or that petitioner could adopt the factual allegations as her testimony, but the petition was not offered or received into evidence, and petitioner did not adopt the allegations. In any event, either approach would have been vulnerable to a hearsay objection. *Cf. Lowrance v. Trow*, 225 Or App 250, 255, 200 P3d 637 (2009) (treating factual allegations in an SPO petition as evidence where the petitioner adopted the allegations while testifying and the respondent did not object to their admission).

"apprehension or fear resulting from the perception of danger." ORS 163.730(1). "Coerce" means "to restrain, compel, or dominate by force or threat." ORS 163.730(2).

In addition to the statutory requirements for an SPO, a constitutional requirement must be satisfied if a petitioner seeks to rely on a contact that involves speech, which is protected by Article I, section 8, of the Oregon Constitution. *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999). To avoid constitutional overbreadth problems, a contact that involves speech can serve as a predicate contact for an SPO only if it is a threat. *Id.* A "threat" is "a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Id.* Threats do not include "the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985).

Having set out the statutory and constitutional requirements for an SPO, we turn to the evidence in this case, which, as explained, is limited to the evidence received at the SPO hearing. For the reasons below, we conclude that, on this record, none of respondent's contacts with petitioner could serve as a predicate contact for the SPO because none of them would have caused petitioner objectively reasonable alarm or coercion, ORS 30.866(1)(a), (b), or objectively reasonable apprehension regarding her personal safety or that of a member of her immediate family or household, ORS 30.866(1)(c). *McGinnis-Aitken*, 235 Or App at 192.

At the SPO hearing, there was evidence that respondent sent petitioner a text message and called her. There was also evidence that he waited outside her house, came over uninvited, sat outside his house and came over while she was visiting her mother's house, and ran her boyfriend's license plate number. There was little evidence regarding the time, manner, or circumstances of the contacts.

Text messages and telephone calls can serve as predicate contacts for an SPO. ORS 163.730(3)(d), (e). If they involve speech, they can serve as predicate contacts if they

are unequivocal threats of imminent serious personal violence that are likely to be carried out. *Rangel*, 328 Or at 303. If they do not involve speech, but instead involve, for example, simply causing the petitioner's telephone to ring, they are treated the same as other nonexpressive contacts and, as such, can serve as predicate contacts if they cause the petitioner objectively reasonable alarm, coercion, or apprehension. *Sparks v. Deveny*, 221 Or App 283, 290, 293, 189 P3d 1268 (2008) (causing a telephone to ring is a nonexpressive contact and can serve as a predicate contact if it satisfies the requirements of ORS 30.866(1)).

In this case, we do not need to decide whether the text message and telephone calls were expressive contacts because, even under the less stringent standard for nonexpressive contacts, the evidence was insufficient. Nothing in the record supports the conclusion that it was objectively reasonable for the calls or text message to cause alarm, coercion, or apprehension, as required by ORS 30.866(1). The message and calls may well have been unwanted and annoying, but more is required. *See, e.g., Osborne v. Fadden*, 225 Or App 431, 439, 201 P3d 278, *rev den*, 346 Or 213 (2009) (although respondents subjected petitioners to a "barrage" of e-mails and telephone calls, which were unwanted and intended to harass and which petitioners found troubling and offensive, the e-mails and telephone calls could not constitute predicate contacts for an SPO because they would not have caused petitioners reasonable apprehension regarding their personal safety); *Sparks*, 221 Or App at 293 (respondent's "hang-up" calls could not serve as predicate contacts for an SPO because they would not have caused petitioner reasonable personal safety concerns).

The same is true regarding respondent's other actions. Waiting outside a person's house or otherwise positioning oneself to observe or contact a person can be a predicate contact for an SPO if, in context, doing so would cause the person the required objectively reasonable alarm, coercion, or apprehension. *Compare, e.g., Smith v. Di Marco*, 207 Or App 558, 564, 142 P3d 539 (2006) (respondent's act of following and watching petitioner could serve as a predicate contact for an SPO given respondent's history of violence and abuse towards petitioner), *with Sparks*, 221 Or App at 292-93

(respondent's acts of following petitioner, attending her exercise class, and calling her house did not constitute predicate contacts for an SPO). In this case, the limited evidentiary record fails to provide such context. There was no evidence that respondent's actions were explicitly threatening; for example, there was no evidence that respondent made threatening gestures or movements towards petitioner or otherwise exhibited an intent to harm her. Nor was there evidence that any of the acts were implicitly threatening; for example, there was no evidence of prior acts of violence or abuse by respondent. Again, respondent's contacts may well have been unwanted and annoying, but on this record we cannot say that they would have caused petitioner objectively reasonable alarm, coercion, or apprehension as required by ORS 30.866(1).

Reversed.