Submitted August 18, reversed October 27, 2010

Melanie Ruth TRAVIS,
*Petitioner-Respondent,*

*v.*

Jack Alfred STRUBEL, Jr.,
*Respondent-Appellant.*

Marion County Circuit Court
09C17250; A142996

242 P3d 690

Monty K. Vandermay argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Petitioner lives across the street from respondent. The relationship between the two is rife with conflict. Ultimately, after a series of particularly unpleasant encounters, petitioner sought a stalking protective order (SPO) against respondent under ORS 163.732(1). After a brief hearing at which neither party was represented by counsel, the trial court ruled that "the statutory criteria for this [stalking protective] order have been met." Respondent appeals. Under ORS 19.415(3)(b), which went into effect before the notice of appeal was filed in this case, we can choose between reviewing the court's findings *de novo* or applying our usual standard of review. Neither party requests *de novo* review, and we do not choose to exercise it. We therefore review the facts for any evidence and the legal conclusions based on those facts for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We reverse.

■      Respondent raises three assignments of error: (1) Petitioner failed to establish the two or more alarming, unwanted contacts which are a necessary predicate for obtaining an SPO; (2) The court committed several procedural errors, including failing to inform respondent of his right to counsel and failing to allow him to present witnesses on his behalf; (3) The SPO is unlawfully broad, in that it would prevent respondent from continuing to live in his home. We agree with respondent's first argument, thereby obviating the need to address the other two.

■■      Under ORS 163.738(2)(a)(B), a court may enter an SPO if:

> "(i)      The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

> "(ii)      It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

> "(iii)      The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal

safety of the victim or a member of the victim's immediate family or household."

Thus, to obtain an SPO, a petitioner must establish, at a minimum, that, on at least two occasions, the respondent contacted the petitioner while subjectively "aware of a substantial and unjustifiable risk" that the contact was "unwanted by the recipient, and then consciously and unreasonably disregard that risk." *Delgado v. Souders*, 334 Or 122, 133, 46 P3d 729 (2002). Further,

> "Under Article I, section 8, of the Oregon Constitution, unwanted contacts that involve speech are subject to a heightened standard of proof. To qualify as a predicate unwanted contact, any contact that involves speech must be a threat—that is, the sort of communication that 'instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts.' *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999)."

*Jennings v. Gifford*, 211 Or App 192, 196, 154 P3d 163 (2007).

With those standards in mind, we review the contacts in this case, presuming, as we must under our standard of review, that all of petitioner's accusations for which there is any evidence are true—despite respondent's testimony that he did not "know anything what the hell she's talking about and basically I think it's all hogwash." *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (we presume that, absent express findings, the trial court implicitly found disputed issue of fact consistent with outcome). Petitioner accuses respondent of "looking in [her] windows," appearing at her workplace (a restaurant), mowing her front lawn without her permission, appearing in her driveway to talk about an incident of vandalism (petitioner does not accuse respondent of the vandalism itself), and meeting with her ex-husband.

We can imagine circumstances in which such contacts could support an SPO. However, in order to do so, petitioner would have to present *some* evidence that, at the time he made the contacts, respondent knew or should have known that they were unwanted. Petitioner did testify that,

"at one point," her fiancé told respondent not to come on petitioner's property, and that she posted a "No Trespassing" sign, apparently with respondent's name on it. She also testified that, in late 2008 or early 2009, she had a friend who is a former police officer warn respondent to avoid contact. But the only evidence that would place the contacts in the context of the warnings is as follows:

> "THE COURT: Okay. And since that time [when the officer warned respondent to stay away], have you had any contact with [respondent]?

> "PETITIONER: Just—nothing—just some whistling across the street, nothing major in that area until about a week-and-a-half ago when he showed up in my driveway, talking about the [vandalism] situation * * *."

Thus, the record is not clear as to whether more than one unwanted contact occurred.

Even if the court could have found that two unwanted contacts occurred, the court could not have inferred that *any* of the contacts were coercive or caused petitioner any alarm. There is no testimony to that effect. We therefore conclude that, although it was clearly in the parties' best interest to avoid each other, the facts as related to the court do not establish a sufficient basis for issuing an SPO.

Reversed.