Submitted October 2, reversed November 25, 2015

Rhonda M. CAMPOLA,
*Petitioner-Respondent,*

*v.*

Matthew Stephen ZEKAN,
*Respondent-Appellant.*

Lincoln County Circuit Court
150759; A159129

362 P3d 1205

David V. Cramer, Judge pro tempore.

Matthew Stephen Zekan filed the brief *pro se.*

No appearance for respondent.

Before Sercombe, Presiding Judge, and Nakamoto, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Respondent appeals from a final stalking protective order (SPO) and judgment entered under ORS 30.866(1), raising three assignments of error. We write to address only respondent's first assignment of error, in which he challenges the sufficiency of the evidence supporting the SPO. Because this is not an "exceptional case[]" warranting *de novo* review, we "review the facts for any evidence and the legal conclusions based on those facts for errors of law." ORAP 5.40(8)(c); *Travis v. Strubel*, 238 Or App 254, 256, 242 P3d 690 (2010). We conclude that the evidence is insufficient to support the SPO against respondent.[1] Accordingly, we reverse.

Petitioner lived in a house in Newport and also operated a restaurant in that house. Respondent and respondent's father lived in a house across the street from the restaurant's entrance. The record indicates that petitioner had previously obtained an SPO against respondent's father and that that SPO was in effect at the time of the hearing in this case. Although the record does not expressly set forth the facts supporting the SPO against respondent's father, the record suggests that respondent's father had harassed petitioner and attempted to close down her business.

Petitioner filed a petition in the trial court for an SPO against respondent under ORS 30.866(1), alleging that respondent had "picked up where his father left off in the pursuit of closing down [her] business." More specifically, petitioner alleged that respondent had been pacing back and forth in front of her restaurant, dressed in a rat suit, and scaring off her customers. According to the allegations in the petition, respondent had also engaged in a "scuffle" with a customer, "followed customers[,] and had [a] verbal altercation." After a hearing, at which respondent did not

---

[1] Our conclusion that the evidence is insufficient to support the entry of the SPO against respondent makes it unnecessary for us to address respondent's additional assignments of error: that "[t]he Circuit Court's imposition of a permanent SPO against Respondent, whose actions entailed the publicization of a labor dispute, offends ORS 163.755(1)(a) and ORS 662.050" and that "[t]he Circuit Court erred in denying Respondent his statutory right to 'the opportunity to show cause why a court's stalking protective order should not be issued.'"

appear, the trial court entered a temporary SPO against respondent.

At the subsequent hearing to determine whether the temporary SPO should be continued for an indefinite period, the trial court began by stating, "[Petitioner], I had a chance to read your petition and it described some various activities. The one that certainly * * * caught my attention the most was you indicated that [respondent] was moving back and forth in front of your restaurant dressed in a rat suit?" Petitioner affirmed that that had occurred and that it had happened "three or four days in a row" from 5:00 p.m. to approximately 8:00 p.m. The trial court asked, "And where was he?" Petitioner testified that respondent was on her side of the street, that she was present, and that her mother was present. The court then stated, "Well, we may need to get more information from you. But at this point, I'd like to just turn things over to [respondent] and see * * * where he's at on that[.] * * * And see whether * * * we really need to get additional information."

The trial court then stated, "[Respondent], I'm just going to ask you, is this something you did? Were you walking in front of the restaurant in a rat costume?" Respondent confirmed that it was something that he did on four consecutive days, with the time ranging from "about a half an hour" to "a little under three hours." He added that his conduct was "entirely peaceful"; that, on the fourth day, "a friend, an employee of [petitioner], [had] approached [him] and shoved [him]"; that the police were called; and that that person "was arrested for that." Petitioner responded, "Your Honor, nobody shoved [respondent]." The court then asked petitioner, "[D]o you know the person that [respondent] is talking about?" Petitioner confirmed that she did and testified that that person did not live in her household.

The trial court ruled that the SPO against respondent should be continued for an indefinite period. In so doing, the court stated that it was "clear that [respondent's] intention was to alarm and frighten these people and—and upset them." The court also noted that petitioner "ha[d] already had to get a stalking order against [respondent's] father for his harassing them in the exact same spot where

[respondent was] standing." When respondent asked if he could respond to the court's ruling, the court replied, "No. You have already told me that you engaged in the unwanted contact on more than one occasion and I did not find that this is appropriate behavior. *** [I]t's *** frankly *** bizarre and *** alarming."

On appeal, respondent contends that there was insufficient evidence in the record to support the SPO. Respondent argues, among other things, that the record is devoid of evidence that respondent's conduct caused petitioner to "fear for her personal safety." We agree with respondent.[2]

"The legal standards governing the issuance of an SPO are well settled." *McGinnis-Aitken v. Bronson,* 235 Or App 189, 191, 230 P3d 935 (2010). As we have explained,

"[t]o obtain an SPO against a person under ORS 30.866(1), a petitioner must demonstrate by a preponderance of the evidence that

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

---

[2] Respondent further argues that his conduct, which involved speech, does not meet the heightened standard for expressive contacts established by *State v. Rangel,* 328 Or 294, 303, 977 P2d 379 (1999) (concluding "that a speech-based contact would be punishable as an element of stalking only if it constitutes a threat" and stating that "a proscribable threat is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts").

Because we agree with respondent that the evidence is insufficient to support the SPO under the standard applicable to SPOs predicated on nonexpressive contact, we need not address that argument. *See Miley v. Miley,* 264 Or App 719, 720 n 1, 335 P3d 853 (2014) (concluding that the trial court erred under the less-stringent standard applicable to SPOs predicated on nonexpressive contacts and declining to consider whether the trial court erred under *Rangel*); *Osborne v. Fadden,* 225 Or App 431, 439, 201 P3d 278, *rev den,* 346 Or 213 (2009) (taking the same approach).

> "(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household.

> "ORS 30.866(1) has both subjective and objective components. To satisfy the subjective component, the petitioner must show that he or she was alarmed or coerced by the contacts, and that the contacts caused apprehension regarding his or her personal safety or the personal safety of a member of his or her immediate family or household. To satisfy the objective component, the contacted person's alarm or coercion must be objectively reasonable and that person's apprehension for his or her personal safety must also be objectively reasonable."

*Swarringim v. Olson*, 234 Or App 309, 311, 227 P3d 818 (2010) (internal citations and quotation marks omitted).

Before analyzing whether petitioner satisfied the statutory requirements to obtain an SPO against respondent in this case, we pause to explain the extent of the evidentiary record. The record suggests that the trial court proceeded as if the allegations in petitioner's petition were in evidence. At the beginning of the hearing, the court noted that it had read the allegations in petitioner's petition and remarked that "[t]he one that certainly * * * caught my attention the most was you indicated that [respondent] was moving back and forth in front of your restaurant dressed in a rat suit?" After petitioner affirmed that that had occurred and testified to a few additional details about where respondent was and who was present, the court stated, "Well, we may need to get more information from you. But at this point, I'd like to just turn things over to [respondent] and see * * * where he's at on that[.] * * * And see whether * * * we really need to get additional information." Once respondent confirmed that he had, on more than one occasion, walked in front of petitioner's restaurant dressed in a rat suit, it appears that the court believed that that admission, combined with the allegations in petitioner's petition, was sufficient for the continuation of the SPO for an indefinite period

However, unless a respondent admits a petitioner's allegations at the SPO hearing, the allegations in a petitioner's petition are not in evidence. *See Falkenstein v.*

*Falkenstein*, 236 Or App 445, 450-51, 236 P3d 798 (2010) (stating that "the evidentiary record * * * is limited to the evidence received at the SPO hearing" and "does not include the factual allegations in the petition," unless those allegations are admitted by the respondent); *Jones v. Lindsey*, 193 Or App 674, 678, 91 P3d 781 (2004) ("[R]espondent contested the allegations in the petition. That decision put petitioner to his proof. We therefore disregard the allegations in the petition as to which petitioner offered no evidence at the hearing."). Therefore, to the extent that the trial court relied on the allegations in petitioner's petition as a basis to support the entry of the SPO, other than those admitted to by respondent at the hearing, the trial court erred.

We now return to our analysis, considering the evidence received at the SPO hearing. When viewing that "evidence * * * and all reasonable inferences to be drawn therefrom" in favor of petitioner, *Delgado v. Souders*, 334 Or 122, 134, 46 P3d 729 (2002), we conclude that the evidence is insufficient to support the SPO against respondent, and that the trial court erred in concluding otherwise. The evidence here, so viewed, shows that respondent, for approximately three hours on four occasions, moved back and forth in front of petitioner's restaurant on petitioner's side of the street, while dressed in a rat suit, and while petitioner and her mother were present. Certainly, the evidence supports the trial court's conclusion that respondent subjected petitioner to repeated unwanted contacts within the meaning of the SPO statutes. And the evidence would also support a finding that respondent's conduct was annoying or upsetting to petitioner, particularly in light of petitioner's history with respondent's father, who, as noted, had apparently engaged in "the pursuit of closing down [petitioner's] business" and had, in the words of the trial court, "harass[ed petitioner and her mother] in the exact same spot where [respondent was] standing."

But there is no evidence in the record that would support a finding that respondent's repeated and unwanted contacts caused petitioner subjective apprehension regarding her personal safety or the personal safety of a member of her immediate family or household, or that any such apprehension would be objectively reasonable. Specifically,

petitioner did not testify that respondent caused her to fear for her safety or the safety of a family member; indeed, there was no evidence presented at the hearing about any response that petitioner may have had to respondent's conduct.[3] *See McGinnis-Aitken,* 235 Or App at 194 (stating that "there is no evidence in the record that petitioner was alarmed or concerned by the door knocking—or by anything else respondent did—so as to cause her alarm or concern for her safety or the safety of her family").

Furthermore, there is no evidence in the record from which such subjective or objectively reasonable apprehension could be inferred. *See Swarringim,* 234 Or App at 315 (applying the less-stringent standard for nonexpressive contacts; concluding that "the evidence falls short of establishing that [the conduct of Michael, one of the respondents,] caused petitioner or a family member reasonable apprehension for personal safety"; and further concluding that, "[a]lthough the conduct may have been obnoxious, petitioner did not testify that either she or family members actually feared for their personal safety as a result of Michael's conduct, and there is no evidence from which that finding can be inferred"). Although the evidence shows that respondent was walking in front of petitioner's restaurant, dressed in a rat suit, that evidence, without more, does not give rise to a reasonable inference that respondent posed a personal safety threat to petitioner or a member of her immediate family or household. In addition, although the evidence shows that the police were called on one occasion, there is no evidence that the police were called because respondent was being violent or aggressive. Indeed, the only evidence received at the hearing about the character of respondent's conduct came from respondent himself, who admitted that he had walked in front of petitioner's restaurant in a rat suit and who testified that it was "entirely peaceful." Petitioner did not refute that testimony; rather, petitioner merely testified that "nobody shoved [respondent]." That evidence does

---

[3] We note that petitioner, in her petition, alleged that she and her mother were "afraid" of respondent and that respondent had engaged in "threatening behavior" to "place [her] in fear of harm[.]" However, as we have explained above, we may not consider those allegations because there was no evidence presented at the hearing to support them.

not show that respondent shoved anyone or that respondent posed a threat to anyone's personal safety. Furthermore, even if it could be inferred that petitioner was apprehensive about the personal safety of the person who was apparently involved in some sort of altercation with respondent—the incident that led to the police being called—respondent's uncontroverted testimony was that that person was "a friend, an employee of [petitioner]" and petitioner testified that that person did not live in her household. Accordingly, any apprehension that petitioner may have felt regarding the personal safety of that person would not satisfy the statutory requirement for an SPO, because that person was not a member of petitioner's immediate family or household.

In the absence of evidence that respondent's repeated and unwanted contacts caused petitioner subjective and objectively reasonable apprehension regarding her own personal safety or that of a member of petitioner's immediate family or household, petitioner fails to meet the requirements set forth in ORS 30.866(1), and there is insufficient evidence to support the SPO against respondent. The trial court erred in concluding otherwise.

Reversed.