Submitted December 6, 2019, reversed March 17, 2021

A. K. F.,
*Petitioner-Respondent,*

*v.*

Paul Andrew BURDETTE,
*Respondent-Appellant.*

Multnomah County Circuit Court
18PO11242; A169942

484 P3d 362

Respondent appeals the trial court's continuance of the restraining order issued against him under the Elderly Persons and Persons with Disabilities Abuse Prevention Act (EPPDAPA), ORS 124.005 to 124.040. Respondent argues, among other things, that the record was insufficient to establish that petitioner qualified as a "person with a disability" under the EPPDAPA definition found in ORS 124.005(9). Specifically, respondent argues that there was insufficient evidence to find that, at the time of the hearing, petitioner was a "person with a mental or physical impairment that substantially limits one or more major life activities." *See* ORS 124.005(9) (incorporating the definition of "person with a disability" in ORS 410.040(7)). *Held*: Petitioner's claim of a substantial limitation in the major life activity of sleeping was insufficiently developed and insufficiently supported by the evidence. Thus, she failed to present evidence sufficient to meet her burden of proof on the "disability" element of her *prima facie* case under the EPPDAPA and ORS 124.005(9). Accordingly, the trial court erred in continuing the restraining order.

Reversed.

Paula J. Kurshner, Senior Judge.

Kenneth A. Kreuscher filed the briefs for appellant.

A. F. filed the brief *pro se*.

Before Lagesen, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

LAGESEN, P. J.

Reversed.

**LAGESEN, P. J.**

Respondent[1] appeals the trial court's continuance of the restraining order issued against him under the Elderly Persons and Persons with Disabilities Abuse Prevention Act (EPPDAPA), ORS 124.005 to 124.040. Respondent argues, among other things, that the record is insufficient to establish that petitioner qualifies as a "person with a disability" under the EPPDAPA definition found in ORS 124.005(9). Specifically, respondent argues that there was insufficient evidence to find that, at the time of the hearing, petitioner was a "person with a mental or physical impairment that substantially limits one or more major life activities." *See* ORS 124.005(9) (incorporating the definition of "person with a disability" in ORS 410.040(7)). We agree and, for that reason, reverse.

The EPPDAPA provides special protections against abuse for the elderly and persons with disabilities. Under it, "an elderly person or a person with a disability who has been the victim of abuse within the preceding 180 days * * * may petition the circuit court for relief under ORS 124.005 to 124.040, if the person is in immediate and present danger of further abuse from the abuser." ORS 124.010(1)(a). "Immediate and present danger under this section includes but is not limited to situations in which the respondent has recently threatened the elderly person or person with a disability with additional abuse." ORS 124.020(4). An order issued under the EPPDAPA is effective for one year or until the order is withdrawn or amended, whichever is sooner, ORS 124.020(1), unless it is terminated, ORS 124.030(2)(a), or renewed "[f]or good cause shown," ORS 124.035.

To initiate this proceeding, petitioner completed a court-provided form for seeking an EPPDAPA restraining order. She checked the box stating, "I am a disabled person. I have a mental or physical disability: that substantially limits one or more of my major life activities." Petitioner described her impairment on the form as "severe anxiety exacerbated by respondent." The trial court initially granted the order *ex parte*, as provided for by ORS 124.020(1).

---

[1] Consistent with ORAP 5.15(1), we refer to the parties by their designations in the trial court.

Respondent, once served with the restraining order, requested a hearing pursuant to ORS 124.020(9)(a). At the hearing, petitioner appeared *pro se*, and respondent appeared with counsel. Addressing whether she qualified as a person with a disability for purposes of the act, petitioner testified that, during the period relevant to the allegations in her petition, she sought "professional help and therapy. I was diagnosed with generalized anxiety and major depressive disorder." Then, petitioner attempted to enter into evidence a letter from her counselor.

Respondent objected to the letter on the basis of hearsay, and the trial court sustained the objection. Petitioner argued that respondent's counsel had agreed to entry of the letter, though respondent's counsel denied that claim. Rather, respondent's counsel explained that he was willing to allow petitioner to call her therapist and appear by telephonic testimony. When petitioner's counselor appeared to be unavailable by phone, the court asked respondent whether he disputed that petitioner qualified as a person with a disability. Respondent confirmed that that was a disputed fact. Testifying about her anxiety at the hearing, petitioner relayed that she was having nightmares. At the close of the hearing, the court continued the restraining order. Respondent appealed. As noted, he contends, among other things, that the court erred when it determined that petitioner qualifies as a person with a disability within the meaning of the statutes.

We review an order issued under EPPDAPA by accepting the trial court's findings of fact if they are supported by any evidence in the record. *See Doyle v. Rohrback*, 257 Or App 523, 525, 306 P3d 789 (2013) (EPPDAPA case (citing *Travis v. Strubel*, 238 Or App 254, 256, 242 P3d 690 (2010))). In the absence of explicit factual findings, we presume that the court found facts consistent with its judgment in petitioner's favor. *Vanik-Burns v. Burns*, 284 Or App 366, 367, 392 P3d 386 (2017) (Family Abuse Prevention Act case). We review the trial court's legal conclusions for errors of law. *Id.*

The question before us is whether the record is sufficient to permit a finding that petitioner is a "person with a disability" under ORS 124.005(9). That statute provides

that "'[p]erson with a disability'" means a person described in "(a) ORS 410.040(7); or (b) ORS 410.715." ORS 410.040(7), the provision that petitioner has invoked in this case, specifies, in turn, that "'[p]erson with a disability' means a person with a physical or mental impairment that substantially limits one or more major life activities."

The text of ORS 410.040 does not specifically define the terms "substantially limit" or "major life activity." To determine the legislature's intent, we look to the text, context, and legislative history of ORS 125.005(9)[2] and ORS 410.040(7).[3] *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Generally, the first step in the statutory interpretation task is to give the words of the statute their plain meaning. *See State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (2015) ("When the legislature does not provide a definition of a statutory term, we ordinarily look to the plain meaning of the statute's text to determine what particular terms mean." (Citation omitted.)). Context includes other provisions of the same and related statutes. *State v. Maynard*, 168 Or App 118, 123, 5 P3d 1142 (2000), *rev den*, 332 Or 137 (2001).

Context supplies the answer here. Several statutes define "person with a disability" in the same way that ORS 410.040(7) does. Notably, the legislature also adopted the same general definition for "person with a disability" in its global statutory definitions. ORS 174.107 provides, in part:

"(1)   As used in the statute laws of this state, 'person with a disability' means any person who:

"(a)   Has a physical or mental impairment which substantially limits one or more major life activities;

"(b)   Has a record of such an impairment; or

"(c)   Is regarded as having such an impairment."

---

[2] ORS 125.005 was first enacted in 1995 as the Elder Abuse Prevention Act (EAPA). Or Laws 1995, ch 666, §§ 2-9. Then, in 1999, the legislature enacted the Elderly Persons and Disabled Persons Abuse Prevention Act, which amended ORS 125.010(1) to allow a "disabled person" to petition for protection from abuse under the EAPA and amended ORS 125.005(2) to define "disabled person" for purposes of who could petition for protection. *See* Or Laws 1999, ch 738, § 1.

[3] ORS 410.040(7) was originally enacted as ORS 410.040(5) in 1981 as part of a comprehensive consolidation of administrative services for seniors and "disabled persons." *See* Or Laws 1981, ch 784, § 1.

In our view, ORS 174.107 is significant because it suggests to us that the legislature intended for the phrase "person with a disability" to mean the same thing whenever "used in the statute laws of this state," unless, of course, the legislature explicitly provides an alternative definition. *See, e.g.*, ORS 133.515 (defining "person with a disability" differently in the criminal statutes in determining when an interpreter must be made available during criminal proceedings); *see also, e.g.*, ORS 311.66 (defining "person with a disability" differently in statutes addressing qualifications for the deferred collection of homestead property taxes). Additionally, legislative history indicates the same aspiration to uniformity. The legislature amended ORS 410.040(7) in 2011, and the legislative history indicates that the current definition was intended to track ORS 174.107. *See* Testimony, Senate Committee on Health Care, Human Services and Rural Health Policy, HB 2057, Feb 25, 2011, Ex 6 (statement of Fred Steele, Community Adult Protective Services and Abuse Prevention Manager at Department of Human Services (DHS)) (testifying that HB 2057 "was introduced on behalf of [DHS]" and that the definitional change in ORS 410.040 "aligns with the general statutory definition for 'person with a disability' provided by the legislature in 1989 (see ORS 174.107)" (parenthetical in original)). Having concluded that the legislature likely intended the term "person with a disability" to mean the same thing in each statute employing the same definition, it is appropriate to look to other statutes using the same phrase to give context to it, in the absence of previous case law interpreting or applying ORS 410.040(7). In particular, we think it appropriate to do so in determining what it means for a person to be substantially limited in a major life activity.

ORS 659A.104(1)(a) is one statute that defines "person with a disability" the same way that ORS 410.040 does. *See* ORS 659A.104(1)(a) (providing that a person has a disability if "[t]he individual has a physical or mental impairment that substantially limits one or more major life activities of the individual"). But perhaps more significantly, unlike ORS 410.140(7) and ORS 174.107, ORS 659A.104(3) provides an additional helpful explanation of what it

means to be substantially limited in a major life activity. It provides:

> "An individual is substantially limited in a major life activity if the individual has an impairment, had an impairment or is perceived as having an impairment that restricts one or more major life activities of the individual *as compared to most people in the general population.* An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. An impairment that substantially limits one major life activity of the individual need not limit other major life activities of the individual. An impairment that is episodic or in remission is considered to substantially limit a major life activity of the individual if the impairment would substantially limit a major life activity of the individual when the impairment is active. *Nonetheless, not every impairment will constitute a disability within the meaning of this section.*"

(Emphases added.)

To be sure, the legislature did not explicitly supply the same guidance with respect to either ORS 410.040(7) or ORS 174.107. That omission certainly raises the question whether the legislature might have intended for the same words in those statutes to mean something other than the meaning ORS 659A.104(3) gives them for the purposes of that statute. But that would undercut the apparent goal of uniformity signaled by the enactment of ORS 174.107. And, in any event, guidance included in ORS 659A.104(3) tracks a commonsense, ordinary understanding of what it means to be substantially limited in a major life activity, a phrase that, by its plain terms, suggests some form of essential reduction from what would otherwise be ordinary. The dictionary defines "substantially" as "in a substantial manner : so as to be substantial," and defines "substantial," to mean, among other things, "important, essential." *Webster's Third New Int'l Dictionary* 2280 (unabridged ed 2002). It defines the verb "limits" pertinently as "to curtail or reduce in quantity or extent." *Id.* at 1312.

For those reasons, we conclude that it is appropriate to look to the definition in ORS 659A.104(3) for the purpose of assessing whether a person qualifies as a "person with a

disability" under ORS 410.040(7). That means that, to qualify as a "person with a disability" under ORS 410.040(7), a person must demonstrate that they have a physical or mental impairment that restricts one or more major life activities, when viewed in comparison with most people in the general population.

Examining the record in this case under that standard, we conclude that there is insufficient evidence that petitioner qualifies as a "person with a disability" under ORS 410.040(7). Although the evidence would permit a finding that petitioner has a mental impairment in the form of a diagnosed anxiety disorder, and also that the impairment has affected petitioner's sleep, the record contains no evidence about the degree to which petitioner's sleep has been disrupted when compared to most other people in the general population.[4] Petitioner testified that she has nightmares, but introduced no evidence that those nightmares interfere with her sleep in a way that differentiates her situation from that of most people in the general population. Without such evidence, there is no basis for concluding that petitioner's mental impairment "substantially limits" a major life activity so as to render her a "person with a disability" under ORS 410.040(7).[5]

_____

[4] In her brief on appeal, petitioner argues that her anxiety affects other major life activities. She has not supported those assertions with any citations to the record below, and our review of the record confirms that those contentions were not presented in any clear way to the trial court.

[5] For what it is worth, our conclusion also is consistent with federal court decisions implementing the federal anti-discrimination laws. *See, e.g.*, *Johnson v. Weld Cty.*, 594 F3d 1202, 1218 n 10 (10th Cir 2010) (noting, with regard to major life activity of sleeping, that many nondisabled people have nightmares or disturbed sleep patterns; under the Americans with Disabilities Act, plaintiff is obliged to present evidence that will permit comparison of the effects of her sleep disturbances to those experienced by the average person). In that regard, we note also that, not only has the legislature signaled an intention that the phrase "person with a disability" have a uniform meaning throughout the Oregon Revised Statutes—except where it has expressly indicated otherwise—in at least one instance, the legislature has also signaled an intention that Oregon statutes protecting people with disabilities be interpreted to promote uniformity with similar federal statutes. *See* ORS 659A.139(1) ("ORS 659A.103 to 659A.144 shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended by the federal ADA Amendments Act of 2008 and as otherwise amended."). Thus, although it requires a judicial journey through several legislatively excavated rabbit holes to get there, it appears somewhat likely that the legislature intended for the phrase "person with a disability" to be construed uniformly with federal

In sum, petitioner's claim of a substantial limitation in the major life activity of sleeping was insufficiently developed and insufficiently supported by the evidence. Thus, she failed to present evidence sufficient to meet her burden of proof on the "disability" element of her *prima facie* case under the EPPDAPA and ORS 124.005(9). Accordingly, we conclude that the trial court erred in continuing the restraining order.

Reversed.

---

statutes doing the same. That said, the legislature's omission of a provision similar to ORS 659A.139 in ORS chapters 174 and 410 raises questions about the weight it intended for federal authority to be given in the context of those chapters. We need not resolve the question definitively today, as the only federal authority we have seen is consistent with the conclusion we have reached.