Submitted November 1, 2013, reversed March 5, 2014

Cynthia M. VALENTI,
*Petitioner-Respondent,*

*v.*

Jeffrey J. ACKLEY,
*Respondent-Appellant.*

Multnomah County Circuit Court
121071036; A153377

326 P3d 604

Kristen L. Winemiller and Pacific Northwest Law LLP filed the brief for appellant.

Respondent Cynthia Valenti waived appearance *pro se.*

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Petitioner sought a restraining order against respondent, her former boyfriend, under the Family Abuse Prevention Act (FAPA). ORS 107.700 - 107.735. The court issued an *ex parte* FAPA restraining order under ORS 107.718, and respondent requested a hearing pursuant to ORS 107.718(10). After the hearing, the trial court continued the restraining order. Respondent appeals that decision, contending that petitioner failed to present sufficient evidence that (1) she had been a victim of abuse within 180 days of filing her petition for a restraining order, (2) she was in imminent danger of further abuse, and (3) respondent represented a credible threat to petitioner's physical safety. ORS 107.718(1). We conclude that the second and third of those elements lack support in the record and, accordingly, we reverse.

On appeal, respondent requests that we exercise our discretion to review *de novo*, but because this is not an "exceptional case," we decline that request. *See* ORAP 5.40(8)(c). Accordingly, because the court made no express findings, we presume that the court found facts consistent with its judgment in petitioner's favor, and we are bound by those implicit factual findings if any evidence in the record supports them. *Hannemann v. Anderson*, 251 Or App 207, 208, 283 P3d 386 (2012). We review the trial court's legal conclusions for error of law. *Id.*

Viewed consistently with that standard of review, the relevant facts are as follows. Respondent and petitioner work together; they also were in an intimate relationship and lived together for three and one-half years. On October 15, 2012, petitioner and respondent had an argument in petitioner's car as they were arriving home from work. Petitioner, who was in the driver's seat, testified that, once they had parked at home, respondent became angry and slammed his hands down on the steering wheel in front of her. Respondent then got out of the car, ran around to petitioner's side, squatted down, looked her straight in the eye, and called her a "psycho" and "some really terrible names." Petitioner felt trapped and afraid, and she screamed to attract her neighbors' attention. Respondent then walked away to "cool off,"

and petitioner went inside the house and locked the doors. When respondent returned about 20 minutes later, he found that he was locked out of the house. He saw petitioner inside the house and asked her, through the locked door, to let him in. Petitioner refused, telling respondent that he could not come in until he "cool[ed] off" and until he apologized for scaring her. Respondent refused to apologize and, instead, repeatedly hit the door with his shoulder, breaking the locked deadbolt and ruining the door. Petitioner testified that when respondent broke down the door, she was "petrified" and "didn't know what would happen next." Petitioner asked respondent to leave. When he did not do so immediately, she called the police, who then arrested respondent. According to petitioner, she was fearful because she and respondent had been "engaged in a very vicious cycle" of her "over dependence on him and his abusiveness on [her]."

At the hearing, petitioner also testified about two other incidents, the first of which preceded the filing of the petition by more than 180 days. On that occasion in May 2011, according to petitioner, respondent allowed her to borrow his car. When she returned to the house, respondent was angry because his wallet had been in the car. When respondent saw that petitioner was becoming upset, he told her to "shut the F up" and called her a "psycho." During an ensuing struggle, petitioner sustained a blow to her nose, causing it to bleed all over her clothes and the carpet. Petitioner testified that she missed several days of work after the incident because she had a black eye.

The second additional incident described by petitioner occurred in June 2012. During that incident, petitioner borrowed respondent's car while he was at work. When she returned, she did not park in respondent's usual spot, and she did not remember to inform him of that. When respondent left work at 2:30 a.m., he could not find his car. He called petitioner, who was asleep, and left a number of increasingly angry voicemail messages. Petitioner testified that when they finally spoke, she was afraid because respondent continued to "berate [her] and threaten [her] over the phone" and was in a "crazy state." The next morning, when petitioner went back to work, she brought a knife to protect herself because she feared that respondent would physically harm her.

On October 16, 2012, petitioner obtained an *ex parte* FAPA restraining order which allowed for only e-mail contact between the parties. Respondent then moved out of their shared home. With the assistance of their employer, respondent and petitioner continued to work together without having to interact. After a permitted exchange of several e-mails, on November 5, respondent informed petitioner by e-mail that he wished to end their relationship and asked that she stop contacting him. Respondent also resigned from a music events group that he and petitioner had founded together. However, after resigning from that group, respondent continued to post comments to the group's e-mail list. In one comment, respondent informed the group that he was planning to attend an event where he knew that petitioner would be performing. When petitioner learned of respondent's intentions, she became concerned and contacted the venue owners to inform them about the restraining order. Ultimately, respondent did not attend the event. In addition, petitioner testified that, on at least one occasion at work, respondent violated the separation plan that their employer had created for them and walked onto her side of the building. Because of those incidents, petitioner testified that she was afraid for her safety.

Respondent requested a hearing on the *ex parte* FAPA restraining order, which took place on December 13, 2012. At the conclusion of the hearing, the trial court confirmed the *ex parte* order, ruling that, in light of the testimony of the witnesses and the exhibits, "the statutory elements to support a FAPA restraining order are established by the evidence."

Under ORS 107.718(1), a court may issue a restraining order upon a showing that the petitioner

"[1] has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, ▮ that there is an imminent danger of further abuse to the petitioner and [3] that the respondent represents a credible threat to the physical safety of the petitioner * * *."

Thus, the question on appeal is whether there is *any* evidence in the record to support those three elements. Respondent contends that the evidence was insufficient to

establish that petitioner was a victim of abuse under ORS 107.705(1), because "[d]omestic arguing, when not accompanied by physical contact, physical harm, or a threat of violence," is not abuse. Respondent also argues that there was insufficient evidence to support a finding that petitioner was in imminent danger of further abuse and that respondent represented a credible threat to her physical safety. On this record, we conclude that, even assuming that petitioner was a victim of abuse, there is no evidence to support the trial court's conclusion as to the second and third elements necessary to issue a FAPA order.

Under ORS 107.718(1), petitioner was required to show that she was in imminent danger of further abuse and that respondent represented a credible threat to her physical safety. "An overt threat of physical violence is not required to support such a finding," and "the trial court may consider testimony regarding events outside the 180-day window * * *." *Hubbell v. Sanders*, 245 Or App 321, 327, 263 P3d 1096 (2011) (citing *Lefebvre v. Lefebvre*, 165 Or App 297, 301, 996 P2d 518 (2000)). However, a petitioner's subjective fear, however genuine, is not enough without evidence that the alleged conduct created an imminent danger of further abuse and a credible threat to the physical safety of the petitioner. *Id*. at 326.

The record in this case lacks such evidence. The record reflects a tumultuous relationship in which, at times while the parties were living together, there were volatile episodes between the parties, sometimes involving violence. However, the volatility that characterized the parties' relationship ended once the parties ceased cohabiting. Accordingly, there is no evidence that respondent posed an imminent danger of further abuse to petitioner and represented a credible threat to her physical safety. Indeed, the parties continued to work together, and have some common social circles, without incident. *Compare Hubbell*, 245 Or App at 326-27 (the respondent's actions of trespassing on the petitioner's property, chasing her in her car, leaving threatening voicemails and text messages, and vandalizing her car demonstrated "a dangerous obsession" with the petitioner that adequately supported determinations that the petitioner was in imminent danger of further abuse and

that the respondent posed a credible threat to her physical safety), *and Lefebvre*, 165 Or App at 301-02 (the respondent's "erratic, intrusive, volatile, and persistent" behavior such as screaming obscenities, making a late night phone call describing what the petitioner was wearing to bed, and rummaging through her possessions, in addition to the petitioner's knowledge that the respondent had been obsessed with the idea of killing a person, was sufficient evidence that the petitioner was in imminent danger of further abuse and that the respondent posed a credible threat to her physical safety), *with Poulalion v. Lempea*, 251 Or App 656, 659, 284 P3d 1212 (2012) (evidence that the respondent went to the petitioner's house to retrieve his property, and then immediately left after the petitioner saw him was not sufficient to show that the respondent posed an imminent danger of further abuse to the petitioner and represented a credible threat to her physical safety).

We do not mean to minimize petitioner's genuine concern; however, "a FAPA restraining order will not be upheld when there is insufficient evidence that the alleged conduct creates an imminent danger of further abuse and a credible threat to the physical safety of the petitioner." *Hubbell*, 245 Or App at 326. The record in this case lacks evidence to support the issuance of the restraining order under ORS 107.718(1).

Reversed.