Submitted February 6, reversed March 15, 2017

Jana VANIK-BURNS,
*Petitioner-Respondent,*

*v.*

Kevin Louis BURNS,
*Respondent-Appellant.*

Columbia County Circuit Court
15PO02316; A160118

392 P3d 386

James D. Huffman filed the briefs for appellant.

Susan M. Muzik filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## GARRETT, J.

Petitioner obtained a temporary restraining order against respondent pursuant to the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735. After a contested hearing, the trial court continued the restraining order. On appeal, respondent argues that the order was not supported by legally sufficient evidence. We agree and reverse.

Neither party requests that we exercise our discretion to review *de novo*, nor do we view this case as exceptional and warranting such review. *See* ORAP 5.40(8)(c). Consequently, we are bound by the trial court's factual findings if they are supported by any evidence; if the trial court did not make express factual findings on disputed issues, we presume that it made implicit findings consistent with its ultimate judgment. *T. K. v. Stutzman*, 281 Or App 388, 389, 383 P3d 287 (2016). We review the trial court's legal conclusions for legal error. *Id.*

We state the facts in a manner consistent with our standard of review. Petitioner and respondent were married in 2008. At the time of the precipitating incidents in April 2015, the two lived together, along with petitioner's adult daughter and daughter's two children. At around the time that petitioner sought the restraining order against respondent, the couple initiated divorce proceedings.

In mid-April, respondent, petitioner, daughter, and daughter's children went fishing on respondent's boat. While on the boat, petitioner and daughter drank beer. Respondent smoked marijuana and did not drink. Petitioner and respondent argued before and during the trip. After daughter asked respondent to slow the boat down, respondent stopped it abruptly, causing the children to bump their heads (they were uninjured) and frightening petitioner and daughter.

After the trip, petitioner and daughter drove the two children home in one vehicle, while respondent drove home by himself. After the group returned home, respondent told daughter outside of petitioner's presence that she and petitioner "should be shot" for driving daughter's children after drinking alcohol. In response, daughter told respondent to stay away from her children and called 9-1-1. When police

arrived, respondent was not present. The responding officer observed that daughter was "really intoxicated" and "very upset," and the officer had "a hard time making sense of the situation." Neither petitioner nor daughter reported or showed signs of physical injury, and no arrests were made.

After the fishing trip incident, respondent left the home for several days. A few days after the incident, daughter contacted petitioner at work and said that respondent had been calling and texting her. Petitioner called respondent, who said that he was going to the house "no matter what" and that daughter and her children should not be present when he arrived. Respondent told petitioner that she and daughter should "find a new place to live." Petitioner asked respondent not to go to the house. After the call, petitioner was upset and cried uncontrollably, and she told her supervisor that she was afraid of respondent. The supervisor concluded that petitioner was too upset to drive and called daughter to pick her up.

Later that day, respondent arrived at the house while petitioner was home. The screen door was locked; although respondent could have forced it open, he did not. Petitioner called 9-1-1. Respondent was not present when the police arrived, but before he left, he told one or both of petitioner and daughter that he would "come back" and "get" them.[1] Petitioner reported that she had had a verbal altercation with respondent and that she was afraid for her safety. The police informed petitioner that they could not prevent respondent from returning to the house. Consequently, petitioner, daughter, and the children left the house and stayed in a hotel for the next several nights.

Petitioner sought a restraining order. In her petition, she asserted that, in November 2014, respondent "tried to hit [her]" and "instead made a hole in the wall," and that on "numerous" occasions, respondent had gotten "mad" and "cornered [her]" so that she "ha[d] no place to go." She recounted the fishing trip incident and its aftermath, averring that respondent had "started pushing * * * daughter around and

---

[1] The court expressly found that respondent made "threatening remarks" during this incident, but it is not clear from the record whether it was crediting petitioner's or daughter's description of the events.

said 'You and [petitioner] should be shot to death.'" With respect to respondent trying to enter the house a few days later, petitioner averred that respondent "was coming to get his guns" and that she "was afraid because [respondent's] behavior has been aggressive lately and escalating."

After an *ex parte* hearing, the trial court entered a restraining order, ordered respondent to vacate the home, and prohibited respondent from purchasing or possessing firearms. Respondent requested a hearing to contest the order.

At the time of the contested hearing, petitioner was no longer residing in the home she had previously shared with respondent. At the hearing, petitioner testified that, among other things, she believed that respondent had returned to the house at some point to retrieve his firearms because she discovered that "things were moved around" in the location where she had hidden his firearms. She acknowledged that the firearms were not actually taken from the house.[2] Petitioner further testified that, after the restraining order was in place, respondent had sent her blank text messages, which she interpreted as threats. She also said that respondent was "stopping on the road where he knew" daughter would be driving by and respondent "would flip her off." Petitioner also recounted one occasion in which she saw respondent in a grocery store, and, as she "ran out of the grocery store," respondent "went after [her] screaming, 'Run, [petitioner], Run.'"

Respondent testified at the hearing. He admitted that, four years before the hearing, he had thrown a phone at the wall hard enough to make a dent. He also admitted that he told daughter that she and petitioner "should be shot" for driving with the children in the car after drinking. He stated that it was "a bad choice of words," but that he was letting daughter know "that [he] didn't approve of them drinking and driving with two little kids in the car." He acknowledged that he had stopped the boat at one point during the fishing trip because petitioner had disregarded his requests to bring him water. He testified that he and

_____
[2] It is not clear from the record at what point petitioner believed that respondent had been in the house looking for the firearms.

petitioner were getting divorced and that he did not know or care where she was residing.

The court continued the restraining order. The court observed that, although the incident four years earlier where respondent threw the phone was not sufficient to justify continuing the restraining order, it was evidence that he "can get mad and do volatile things." The court also remarked that "the boat incident was bad" and "made everybody afraid that they were going to fall over," and that petitioner "did in fact stumble and fall."[3] The court credited respondent's description of "the drinking" and daughter's behavior, and the court agreed that respondent's statement that petitioner and her daughter should be "shot" was not an "immediate threat." The court nevertheless pointed to testimony from petitioner and daughter that respondent was "scary" on that day and that petitioner "had a meltdown at work over this." The court also cited respondent's "threatening remarks" that he made when he returned to the home several days later. The court explained that it was upholding the order in part because petitioner and respondent should not "have contact," they "should get a divorce," and respondent was partly responsible for the "high level of conflict going on in th[eir] home." The court continued the firearm restriction based on petitioner's statement that she would feel threatened if respondent was in possession of firearms.

In order to obtain a restraining order, petitioner had the burden to show by a preponderance of evidence (1) that respondent "abused" her in the 180 days preceding the filing of the petition,[4] (2) that respondent presents an "imminent danger of further abuse" to petitioner, and

---

[3] There is no evidence in the record to support the trial court's finding that petitioner fell or stumbled during the fishing trip incident.

[4] "Abuse" is defined as "the occurrence of one or more of the following acts between family or household members":

"(a) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

"(b) Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.

"(c) Causing another to engage in involuntary sexual relations by force or threat of force."

ORS 107.705(1).

(3) that respondent "represents a credible threat to the physical safety of the petitioner." ORS 107.718(1). "A petitioner must meet each of those requirements to obtain a FAPA restraining order." *T. K.*, 281 Or App at 391 (internal quotation marks omitted). Applying that standard, we conclude that, even assuming that petitioner proved a qualifying incident of abuse, there was insufficient evidence to support a conclusion that respondent presented a "credible threat" to petitioner's physical safety.

In continuing the restraining order, the trial court placed primary emphasis on petitioner's (and daughter's) subjective fear of respondent. Yet, evidence of subjective fear alone is insufficient to justify issuance of a FAPA restraining order. *Id.* Instead, petitioner was required to present evidence establishing that "respondent's conduct, *in fact*, create[d] an imminent danger of further abuse and a credible threat to the physical safety of the petitioner." *Id.* (emphasis added; internal quotation marks omitted). In other words, petitioner had the burden to prove that her ongoing fear of harm from respondent was objectively reasonable. *See K. L. D. v. Daley*, 280 Or App 448, 453, 380 P3d 1226 (2016) (viewing the evidence supporting a FAPA restraint order "objectively"); *G. M. P. v. Patton*, 278 Or App 720, 722, 377 P3d 657 (2016) (same).

Here, the record lacks evidence that respondent presented a credible threat to petitioner's physical safety at the time of the hearing. The record shows that, while petitioner and respondent cohabited, they had a volatile relationship punctuated by acts of physical aggression, threats, and anger by respondent. At the time of the FAPA hearing, however, the couple had ceased cohabiting. Respondent left the couple's home after the fishing trip incident, and the record reflects only sporadic contact between him and petitioner since then. *Cf. Daley*, 280 Or App at 453-54 (restraining order was not supported by sufficient evidence in part because there was no evidence of abuse or concerns about abuse between the time that the petitioner left the respondent's home and the FAPA hearing); *Patton*, 278 Or App at 722-23 (restraining order was not supported by sufficient evidence—despite the respondent's "aggressive behavior, his threat to destroy [the] petitioner's car," and his stated

interest in acquiring a firearm—because the respondent's behavior was isolated and not persistent); *C. M. V. v. Ackley*, 261 Or App 491, 495-96, 326 P3d 604 (2014) (restraining order was not supported by sufficient evidence despite the parties' "tumultuous relationship" involving volatile and sometimes violent episodes because "the volatility that characterized the parties' relationship ended once the parties ceased cohabiting").

The limited contact between respondent and petitioner since the fishing trip incident falls short of what would be required to prove that respondent posed an imminent threat to petitioner's safety. We agree with the trial court that respondent's comment that petitioner and daughter "should be shot" for driving the children after drinking alcohol cannot reasonably be understood, on this record, as an actual threat of harm, as opposed to a hyperbolic expression of anger. Respondent's demand that petitioner and daughter find a new place to live suggests that respondent wanted less contact with petitioner, not more. There was nothing unlawful about respondent's attempt to return to his home several days after the fishing trip, and, although petitioner testified to her belief that respondent wanted to retrieve the firearms that he kept at the home, nothing in the record supports a conclusion that respondent actually did so or that he ever threatened to use them against petitioner.

Although petitioner testified that she perceived the blank text messages from respondent to be threats, she provided no evidence demonstrating that those messages could be reasonably construed as threats of harm (instead of, for example, attempts to harass or annoy). Further, the incident in which respondent screamed at petitioner in the grocery store does not show that respondent had a persistent intent to seek petitioner out in order to menace and intimidate her. *Cf. Maffey v. Muchka*, 244 Or App 308, 314, 261 P3d 26 (2011) (sufficient evidence supported FAPA restraining order when the respondent told the petitioner that he would "make her life a living hell," expressed a desire to take their child from the petitioner, and violated an *ex parte* restraining order by coming near the petitioner's safe house on multiple occasions and having a friend call petitioner); *Hubbell v. Sanders*, 245 Or App 321, 327, 263 P3d 1096 (2011) (sufficient evidence

supported FAPA restraining order when the respondent had a "dangerous obsession" with the petitioner, including evidence that he chased petitioner in his car, repeatedly trespassed on her property, and threatened petitioner after the *ex parte* restraining order issued); *Lefebvre v. Lefebvre*, 165 Or App 297, 301-02, 996 P2d 518 (2000) (sufficient evidence supported FAPA restraining order when the respondent engaged in "erratic, intrusive, volatile, and persistent" behavior and had an "obsess[ion] with the idea of killing another person").

For the foregoing reasons, we conclude that the record lacks sufficient evidence to support issuance of the FAPA restraining order.

Reversed.