Argued and submitted November 9, 2020, affirmed May 12, 2021

E. H.,
*Petitioner-Respondent,*
*v.*
Joseph BYRNE,
*Respondent-Appellant.*

Marion County Circuit Court
19PO10999; A173164

487 P3d 869

Respondent appeals a judgment continuing a sexual abuse protective order (SAPO). Under ORS 163.760 to 163.777, a person may obtain a SAPO if the person has been subjected to sexual abuse by someone who is not a "family or household member" and the person fears for their physical safety if a restraining order is not entered. Petitioner obtained a SAPO against respondent, which respondent contested, and, after a hearing, the trial court continued the SAPO. Respondent argues that the trial court erred in doing so, because petitioner did not meet the statutory requirements. First, respondent contends that his and petitioner's consensual kissing on the night that he raped her gave rise to a "sexually intimate relationship" that made him and petitioner "family or household members" for SAPO purposes. Second, respondent argues that the evidence was legally insufficient to support the trial court's finding that petitioner reasonably feared for her physical safety with respect to respondent without the restraining order. *Held*: The trial court did not err in continuing the SAPO. Petitioner and respondent were not "family or household members" for SAPO purposes, and the evidence was legally sufficient to support the trial court's physical-safety finding.

Affirmed.

Heidi O. Strauch, Judge pro tempore.

Jason E. Thompson argued the cause for appellant. Also on the brief was Thompson Law, LLC.

Rachael A. Federico argued the cause for respondent. Also on the brief were Rachel M. Hungerford and Legal Aid Services of Oregon.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Petitioner sought a restraining order against respondent pursuant to ORS 163.760 to 163.777, on the basis that she had been subjected to sexual abuse by someone who was not a family or household member and that she reasonably feared for her physical safety if a restraining order was not entered.[1] Such a restraining order is commonly known as a "sexual abuse protective order" or "SAPO," although that term does not appear in the statutes themselves. Respondent contested the restraining order, and, after a hearing, the trial court continued it. On appeal, respondent contends that the trial court erred in doing so because petitioner did not meet the requirements for a SAPO. We affirm.

## FACTS

This is our first time construing the SAPO statutes. We agree with the parties that our standard of review for a SAPO is the same as it would be for a Family Abuse Prevention Act (FAPA) restraining order or a stalking order. That is, we are bound by the trial court's express and implied factual findings if they are supported by any evidence in the record, and we review the trial court's legal conclusions for errors of law. *See H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021) (standard of review for stalking protective order); *J. V.-B. v. Burns*, 284 Or App 366, 367, 392 P3d 386 (2017) (standard of review for FAPA restraining orders).

A detailed recitation of the underlying facts would not benefit the bench or bar, so we discuss only those facts necessary to explain our legal conclusions.

Petitioner and respondent met online through a dating app. They decided to meet in person and did so on a Friday night at 9:15 p.m. They met at a bar, where they had drinks, and then petitioner drove respondent to her apartment, where she offered him food and drink. They consensually kissed on the couch. Respondent then violently raped petitioner for several hours. He repeatedly used physical force, including hitting petitioner, pinning her down, and strangling her with a belt. At one point, respondent, who

---

[1] The SAPO statutes were amended in 2020, but those amendments are not material to the issues on appeal. We therefore cite the current statutes.

was a medical student, reminded petitioner, who had previously mentioned having a genetic condition that increases her risk of joint dislocation, that she was "weak and fragile and that he could dislocate [her] joints if he wanted." He also told her at other times that he could do whatever he wanted. Petitioner did not know if respondent would let her live and just focused on surviving the night. Eventually, petitioner ran to the bathroom and, upon emerging, found respondent dressed and ready to leave. She drove him to his car shortly before 1:30 a.m. Respondent told petitioner before leaving that he hoped to hear from her and see her again.

Petitioner has been "terrified" since that night. She was terrified to go to the police, because police investigations take a long time and respondent knows where she lives and goes to school, and she was afraid that respondent would come hurt her. Petitioner was also afraid to leave her house, for fear that respondent would hurt her dog to get back at her. However, petitioner saw her doctor on the Monday after the rape, and the doctor encouraged her to make a police report, so she did. She has since "lived in constant fear" of respondent. Meanwhile, respondent "unfriended" petitioner on the dating app on which they met, and they have had no further contact since the night of the rape. To petitioner's knowledge, respondent has not come to her home or school, tried to contact her, or posted anything about her online.

About five weeks after the rape, petitioner filed for a SAPO. *See* ORS 163.763 (petition procedure). Consistent with the statutory procedures, petitioner initially appeared *ex parte*, the trial court entered a SAPO, respondent contested the SAPO, and the trial court then held a noticed hearing, after which it continued the SAPO. *See* ORS 163.765 (*ex parte* hearing procedure); ORS 163.767 (contested hearing procedure). In continuing the SAPO, the court expressly found petitioner credible. Respondent appeared at the hearing through counsel and did not testify.

## ANALYSIS

Prior to 2013, the only types of restraining orders generally available to sexual assault victims in Oregon were

FAPA orders, which are available against family or house-hold members,[2] and stalking protective orders, which are available against nonfamily and nonhousehold members but require repeated unwanted contact.[3] The SAPO law was enacted in 2013 to fill a perceived gap in Oregon law, by making restraining orders available to sexual assault victims who did not meet the requirements for a FAPA order, in that they did not have a family or household relationship with the perpetrator, and who did not meet the requirements for a stalking protective order, in that there had been a single incident of sexual abuse without repeated unwanted contacts. House Bill (HB) 2779 (2013); Audio Recording, House Committee on Judiciary, HB 2779, Mar 12, 2013, at 00:01:12 (statement of Rep Sara Gelser), https://olis.leg.state.or.us (accessed Apr 22, 2021); Audio Recording, Joint Subcommittee on Public Safety, HB 2779, May 13, 2013, at 00:43:03 (statement of Sybil Hebb, Oregon Law Center), https://olis.leg.state.or.us (accessed Apr 22, 2021).

The SAPO law is codified at ORS 163.760 to 163.777. The key substantive provision is ORS 163.763, which provides:

"(1)   A person who has been subjected to sexual abuse and who reasonably fears for the person's physical safety may petition the circuit court for a restraining order if:

"(a)   The person and the respondent are not family or household members;

"(b)   The respondent is at least 18 years of age; and

"(c)   The respondent is not prohibited from contacting the person pursuant to a foreign restraining order as

_____

[2] A person may seek a FAPA restraining order if the person has been the victim of "abuse" by a family or household member within the preceding 180 days and "is in imminent danger of further abuse from the abuser." ORS 107.710(1); *see also* ORS 107.705(1) (defining "abuse" as certain acts "between family or household members"); ORS 107.718(1) (regarding required findings).

[3] A person may seek a stalking protective order if someone has intentionally, knowingly, or recklessly engaged in "repeated and unwanted contact" with the person or an immediate family or household member of the person, thereby "alarming or coercing" the person; it is objectively reasonable for the person to have been alarmed or coerced by the contact; and the contact has caused the person reasonable apprehension about their own personal safety or that of an immediate family or household member. ORS 30.866(1).

defined in ORS 24.190, an order issued under ORS 30.866, 124.015, 124.020, 163.738 or 419B.845 or an order entered in a criminal action.

"(2)(a)   A petition seeking relief under ORS 163.760 to 163.777 must be filed in the circuit court for the county in which the petitioner or the respondent resides. The petition may be filed, without the appointment of a guardian ad litem, by a person who is at least 12 years of age or by a parent or lawful guardian of a person who is under 18 years of age.

"(b)   The petition must allege that:

"(A)   The petitioner reasonably fears for the petitioner's physical safety with respect to the respondent; and

"(B)   The respondent subjected the petitioner to sexual abuse.

"(c)   The petition must include allegations made under oath or affirmation or a declaration under penalty of perjury.

"(d)   The petitioner has the burden of proving a claim under ORS 163.760 to 163.777 by a preponderance of the evidence."

Thus, to qualify for a SAPO, it must be the case that (1) the petitioner and the respondent are not "family or household members," a defined term that we discuss shortly; (2) the respondent is at least 18 years old; and (3) there are no other qualifying no-contact orders. ORS 163.763(1). And, to obtain a SAPO, the petitioner must prove by a preponderance of the evidence that the petitioner (1) was subjected to sexual abuse, as statutorily defined,[4] by respondent; and (2) reasonably fears for petitioner's physical safety with respect to the respondent if a SAPO is not entered. ORS 163.763(2).

---

[4] "Sexual abuse" means "sexual contact" with a person who either "does not consent to the sexual contact" or "is considered incapable of consenting to a sexual act under ORS 163.315, unless the sexual contact would be lawful under ORS 163.325 or 163.345." ORS 163.760(2). "Sexual contact" is "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6); *see* ORS 163.760(3) (adopting ORS 163.305's definition of "sexual contact").

If the petitioner has filed a petition in accordance with ORS 163.763, and the trial court finds that the petitioner was subjected to sexual abuse and finds that it is objectively reasonable for a person in the petitioner's situation to fear for their physical safety if a SAPO is not entered, then the trial court is to enter an order restraining the respondent from contacting the petitioner and from intimidating, molesting, interfering with, or menacing the petitioner or attempting to do so. ORS 163.765(1).

In this case, respondent raises two specific legal challenges to the trial court's continuation of the SAPO after he contested it. First, he argues that he and petitioner are "family or household members," based on the consensual kissing that occurred before the rape, such that ORS 163.763(1)(a) precludes petitioner from obtaining a SAPO (but potentially makes her eligible to seek a FAPA order). Second, he argues that the evidence was legally insufficient to support the trial court's finding that petitioner reasonably fears for her physical safety with respect to respondent.

We readily reject respondent's first argument. The SAPO law adopts FAPA's definition of "family or household members." ORS 163.760(1) (adopting the definition of "family or household members" in ORS 107.705). Under that definition, "family or household members" means spouses; formers spouses; adult persons related by blood, marriage, or adoption; persons who are cohabiting or have cohabited with each other; persons "who have been involved in a sexually intimate relationship with each other within two years immediately preceding the filing by one of them of a petition under ORS 107.710"; and unmarried parents of a child. ORS 107.705(4).

It is undisputed that petitioner and respondent are not spouses, former spouses, unmarried parents of a child, or related. It is also undisputed that they have never cohabited. But respondent argues that, because he and petitioner consensually kissed before the rape, they were "involved in a sexually intimate relationship" in the two years immediately preceding petitioner's filing of the SAPO petition. That argument fails. A brief period of consensual kissing shortly before a rape does not establish the existence of a "sexually

intimate relationship" for FAPA or SAPO purposes, and we disagree with respondent that anything in our case law supports his position that it does. Although there is room to debate exactly what is necessary to create a "sexually intimate relationship" as that term is used in ORS 107.705(4)(e), this case falls well outside any gray area. A brief period of kissing is not a "relationship," and, although kissing may be "intimate" in nature, kissing alone does not give rise to a "sexually intimate" relationship, as that term would commonly be understood. *See Webster's Third New Int'l Dictionary* 2082 (unabridged ed 2002) (defining "sexual"); *id.* at 1184 (defining "intimate"). Nothing in the statutes suggests that the legislature intended "sexually intimate relationship" to include a brief period of consensual kissing by two people who just met. Petitioner and respondent are not "family or household members" for SAPO purposes.[5]

That brings us to respondent's second argument: that the evidence was legally insufficient to support the trial court's finding that petitioner reasonably feared for her physical safety with respect to respondent if a SAPO was not entered. After hearing the evidence, the trial court made an express finding on that point. In doing so, it explained that credible evidence established a violent and controlling sexual encounter that put petitioner in reasonable fear that she was going to be killed and during which respondent demonstrated a lack of respect for her "personal autonomy, for her bodily autonomy, and for the sanctity of her home." In that context, the court viewed respondent's departing statement

---

[5] We note that the definition of "family or household members" in ORS 107.705(4)(e) specifically refers to people "who have been involved in a sexually intimate relationship with each other within two years immediately preceding the filing by one of them of *a petition under ORS 107.710*." (Emphasis added.) A "petition under ORS 107.710" is a FAPA petition. Both parties assume that, as applied to a SAPO, the definition should be understood to refer to people who have been involved in a sexually intimate relationship with each other within two years immediately preceding the filing by one of them of a SAPO petition under ORS 163.763. Although we agree that that is likely what the legislature intended, there is at least some tension between the legislature's intent and the actual text of ORS 107.705(4)(e). *See* ORS 174.010 (when construing a statute, we are "not to insert what has been omitted, or to omit what has been inserted"). Given our disposition, we need not resolve that issue today. For present purposes, we assume without deciding that petitioner would have had to seek a FAPA, rather than a SAPO, if she had been in a "sexually intimate relationship" with respondent in the two years prior to filing her SAPO petition.

that he hoped to see petitioner again as "indicat[ing] for his part certainly a desire for further encounter when the initial encounter was deeply and profoundly troubling and violent." Under the circumstances, the court found that it was objectively reasonable for someone in petitioner's situation to fear for her physical safety.

Analogizing to case law regarding FAPA restraining orders and stalking protective orders, respondent argues that the evidence was legally insufficient to find that petitioner had an objectively reasonable fear for her physical safety. Respondent emphasizes that he has not contacted petitioner since the rape. He describes the rape as a "remote and isolated" incident. In response, petitioner points out that a SAPO does not require repeated incidents of unwanted contact (as would be required for a stalking protective order) or an imminent danger of further abuse (as would be required for a FAPA order).[6] She emphasizes the brutality of the sexual assault, that it occurred in her own home, that respondent used physical force, that he expressly threatened that he could exploit her medical condition to physically injure her if he wanted, that he knows where petitioner lives and where she goes to school, and that respondent's final words were to articulate his desire to see petitioner again.

As noted, ORS 163.765(1) imposes an "objective" reasonableness requirement with respect to petitioner's fear for her physical safety if a SAPO was not entered. On this record, we conclude that the evidence was legally sufficient for the trial court to make the finding that it did. The fact that there was a single incident of sexual abuse is not dispositive, because only one incident is required for a SAPO. Rather, the question is whether the totality of the circumstances made it objectively reasonable for petitioner to fear for her physical safety. That there was only one incident of

---

[6] During a hearing on HB 2279, a representative for the Oregon Criminal Defense Lawyers Association suggested that "the standard for further future harm, threat, should be more in alignment with the language of the FAPA and elder abuse," *i.e.*, an imminent danger of further abuse (ORS 107.710(1) (2013)) or an immediate and present danger of further abuse (ORS 124.010 (2013)). Audio Recording, House Committee on Judiciary, HB 2779, Mar 12, 2013, at 00:34:24 (statement of Gail Meyer), https://olis.leg.state.or.us (accessed Apr 22, 2021). The legislature did not make that change, indicating that the statutory differences were intentional.

sexual abuse is certainly relevant to that inquiry. But so too are the facts that the one incident was violent, that respondent used physical force to effectuate and prolong the sexual abuse, and that respondent expressly asserted his ability to exploit petitioner's medical condition to physically injure her if he wanted and to otherwise hurt her if he wanted. Also relevant is the fact that respondent is a virtual stranger to petitioner, such that the only basis to assess how he might act in the future is the "deeply and profoundly troubling and violent" way in which he acted during their one in-person encounter, a reality to which the trial court alluded in discussing respondent's parting remark about wanting to see petitioner again. Under the circumstances, there was sufficient evidence to allow the trial court's objective-reasonableness finding. The trial court did not err in continuing the SAPO.

Affirmed.