226 April 24, 2024 No. 263

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

J. E. -S.,
*Petitioner-Respondent,*

*v.*

Simon SHIELDS,
*Respondent-Appellant.*

Jackson County Circuit Court
23PO01738; A180897

Joseph M. Charter, Judge.

Argued and submitted March 12, 2024.

George W. Kelly argued the cause and filed the briefs for appellant.

Jamie Hazlett argued the cause for respondent. On the brief were Garrett Ramsey and Maryanne Pitcher.

Before Joyce, Presiding Judge, Lagesen, Chief Judge, and Jacquot, Judge.

JOYCE, P. J.

Affirmed.

**JOYCE, P. J.**

Respondent appeals from an order continuing a restraining order issued against him under the Family Abuse Prevention Act (FAPA). He argues that the trial court erred in finding him to be a continuing credible threat to petitioner's physical safety. We affirm.

We review the trial court's factual findings for any evidence to support them and the trial court's legal conclusions for legal error. *J. V.-B. v. Burns*, 284 Or App 366, 367, 392 P3d 386 (2017). We state the facts consistently with that standard of review.

The parties began their relationship in 2013 and married in 2018. They have two children who are 6 and 9 years old. Respondent is a non-citizen, and he was seeking a hardship waiver to allow him to remain in the United States. To obtain the waiver, respondent needed to show that petitioner was dependent on him as a caregiver.[1]

In September 2022, there were two incidents of violence, both of which related to arguments between the parties about respondent's immigration status and petitioner's refusal to claim that she was dependent on him to enable him to obtain the hardship waiver. In the first incident respondent yelled at petitioner and threw a mason jar filled with oatmeal into a boiling pot of water on the stove, upturning the pot and splashing boiling water onto petitioner. In the second incident, respondent chased petitioner around their home with his fist raised above his head, causing petitioner to hide in a closet.

In February 2023, a deputy went to the parties' home after receiving a call about a domestic dispute. The parties had been discussing divorce and arguing, and petitioner had locked respondent out of the house. After talking with the parties, the deputy left the property, but he returned after petitioner's father called 9-1-1 saying respondent was trying to run petitioner over. The deputy concluded that respondent

---

[1] Petitioner testified that respondent wanted her to say that she "suffered from depression or anxiety or something and that I needed him, which I do not. And also, the hardship waiver would include I have Lupus, so he was trying to use any way that he could to say that I needed him."

had not tried to run petitioner over, but because both parties were being unreasonable with each other he felt it necessary to "stay on scene until a resolution was found." Each parent took a child and left, and from that point on the parties were separated.

Petitioner sought a FAPA order based on the two incidents of abuse that occurred in September 2022.[2] The court granted the *ex parte* order, and respondent requested a contested hearing. At that hearing, petitioner testified about the September incidents, saying that respondent had become increasingly angry about his immigration status, and that "[s]ince [respondent] didn't get his immigration, it's—I'm terrified." She also testified that in 2014 respondent had thrown her on the floor and threw a mason jar at her head, and that respondent had thrown many objects at her during their relationship, including chairs and his tablet.

Petitioner also testified that respondent went to the courthouse on the day that she filed for the restraining order and that he had to be escorted out of the building by security. Petitioner's father testified that he was at the courthouse with petitioner and that respondent showed up and asked him why they had taken the kids out of school. Petitioner's father said the conversation did not become "heated," but that an advocate that was with petitioner "got right between [them] and told [respondent] to leave," and that the advocate "had to, like, actually charge [respondent] and [security staff] removed him." Petitioner's father testified that he and petitioner "were shaken."

The trial court continued the restraining order, finding that petitioner was a credible witness as to the incidents of abuse and that "the statute's requirements have been met by a preponderance of the evidence."

Under ORS 107.716(3)(a), the trial court may continue a FAPA order following a contested hearing after finding that (1) the respondent committed past abuse within 180 days of filing, (2) the petitioner reasonably fears for their

---

[2] Petitioner filed for divorce in December 2022, but that petition was dismissed by stipulation in January 2023. The court set aside that judgment of dismissal on the same day that petitioner filed the FAPA petition.

physical safety, and (3) the respondent represents a credible threat to the petitioner's physical safety or the physical safety of their child(ren).

On appeal, respondent challenges only the court's finding that he represents a credible threat to petitioner's physical safety. Respondent notes that petitioner continued living with respondent for five months after the September incidents of abuse, and there was no further abuse during that time; and there has not been any further abuse since the parties separated, even though the parties are in regular contact. In respondent's view, those circumstances foreclose a finding that respondent is a continuing credible threat to petitioner's physical safety.

We disagree with respondent. The circumstances that led to the volatility and abuse here—issues related to respondent's immigration status—were ongoing after the parties separated and were exacerbated by the parties' pending divorce. We thus agree with petitioner that, because appellant had been relying on his relationship with her to legally remain in the United States, the court could infer that the parties' separation places petitioner at a heightened risk of further abuse. *See M. A. B. v. Buell*, 366 Or 553, 566, 466 P3d 949 (2020) ("Although there might be cases where the parties' separation necessarily represents a change in circumstances that mitigates the risk of further abuse, there are also likely to be many cases where a trial court would be entitled to conclude that the parties' separation could be the impetus for further abuse.").

Thus, unlike the cases upon which respondent relies—where the parties' separation represented a significant change in circumstances such that the threat of further abuse dissipated[3]—here it was reasonable for the trial court

_____

[3] *J. K. v. Kargol*, 295 Or App 529, 533, 435 P3d 814 (2019) ("[T]he nature of the parties' relationship changed once they no longer lived together ***. [T]here have been no physical or volatile interactions between the parties [and] they have had very limited contact."); *J. V.-B.*, 284 Or App at 371 (although the parties had a volatile relationship when they lived together, "[a]t the time of the FAPA hearing [they] had ceased cohabiting *** and the record reflects only sporadic contact *** since then."); *C. M. V. v. Ackley*, 261 Or App 491, 495, 326 P3d 604 (2014) ("[T]he volatility that characterized the parties' relationship ended once the parties ceased cohabiting. Accordingly, there is no evidence that respondent *** represented a credible threat to [petitioner's] physical safety.").

to conclude that respondent continued to be a credible threat to petitioner due to respondent's ongoing immigration issue and his reliance on petitioner for assistance with that issue. That inference is also supported by the fact that, although there were no further incidents of abuse after the parties separated, the encounter at the courthouse left petitioner and her father "shaken" and resulted in security escorting respondent out of the building.[4]

Under those circumstances, then, where there was a pattern of abuse related to respondent's immigration issue, respondent's immigration issue continued after the parties separated, and there was a volatile incident between the parties after they separated, the evidence was sufficient for the trial court to conclude that respondent represented a credible threat to petitioner's physical safety. Accordingly, we affirm.

Affirmed.

---

[4] Respondent disputes petitioner's and her father's testimony about this incident. According to respondent's testimony, he left the courthouse voluntarily after he and petitioner's advocate spoke to a security guard. However, "in the absence of explicit findings on disputed issues, we presume that the court found facts consistent with its judgment in petitioner's favor." *Kargol*, 295 Or App at 530.