608 May 21, 2025 No. 447

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

V. S.,
*Petitioner-Respondent,*

*v.*

PATRICK STERBA,
aka Patrick Thomas Sterba,
*Respondent-Appellant.*

Columbia County Circuit Court
22PO06362; A179337

Maureen H. McKnight, Senior Judge.

Argued and submitted March 18, 2024.

George W. Kelly argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this domestic relations case, respondent appeals from a Family Abuse Prevention Act (FAPA) restraining order that was continued after a contested hearing. Respondent asserts in a single assignment of error that the trial court erred in finding that abuse had occurred within the six months preceding the filing of the FAPA petition and thus that the trial court erred in continuing the FAPA order. We conclude that the record is sufficient to support the continuation of the FAPA order because, as explained below, the context and history of the parties' interactions matter. Accordingly, we affirm.

Respondent does not request *de novo* review, and this is not an exceptional case in which we would exercise our discretion to do so. *See* ORS 19.415(3)(b); ORAP 5.40(8)(c) (explaining that we exercise our discretion to review *de novo* "only in exceptional cases"); ORAP 5.40(8)(d) (outlining nonexclusive list of criteria relevant to the exercise of discretionary authority to review *de novo*). Therefore, we are bound by the trial court's factual findings if they are supported by any evidence in the record, and in the absence of express factual findings, we presume that the court made findings consistent with its ultimate judgment. *J. V.-B. v. Burns*, 284 Or App 366, 367, 392 P3d 386 (2017). We review the trial court's legal conclusions for legal error. *Id.* We provide an overview of the pertinent facts with that standard of review in mind.

Initially, the trial court entered a FAPA order following an *ex parte* hearing, and respondent requested a contested hearing. At the contested hearing, petitioner testified that she and respondent are married, and that respondent has been unhappy in the last few years and has expressed his anger by "[y]elling, screaming, saying things." Petitioner described an incident that occurred about a month before the hearing where respondent held a firearm to his throat in front of the parties' minor child and was yelling, "Do you want me to kill myself?" Petitioner, who overheard the interaction, came into the room and saw the firearm in respondent's hand. A couple of weeks before that incident, respondent told petitioner, "Maybe you [are] going to find me in the

car dead," and "I wish I would be dead. I wish I would kill myself." Petitioner further testified that respondent keeps a firearm on his nightstand while he is at work but carries it in a holster "all the time" while at home. Petitioner testified that he wears it when "he leaves the house, when he comes back to the house, he wears it all the time."

Petitioner described incidents where respondent repeatedly has thrown items, including "throw[ing] the dishes" if they "weren't done" and dropping a television on the floor and "stomping on it." Petitioner recounted a specific incident where respondent "was upset about something * * * and he swept the entire plate of fork and knife * * * into the corner with his hand." She explained that, although he did not swipe the plate toward anybody, the incident was "very intimidating and scary." Moreover, petitioner described a time when respondent was upset and threw his phone at her. Petitioner testified that she is "afraid he is going to do something more damaging, but I try to keep myself away from him."

In response to a hypothetical from the trial court about what she would feel if she saw respondent walk toward her late at night, petitioner told the court, "I'm not afraid of him physically. I'm not afraid of him to come home, but I'm afraid of consequences of what's going to follow afterwards." The court sought clarification:

> "THE COURT:   Okay. So, when you say you're afraid of consequences, is one of the risks physical danger, or are you—
>
> "[PETITIONER]:   Emotional.
>
> "THE COURT:   You're not concerned about him physically hurting you at all; is that what you're telling me?
>
> "[PETITIONER]:   Well, he can try but he won't succeed.
>
> "THE COURT:   And why is that?
>
> "[PETITIONER]:   Because I will fight back.
>
> "THE COURT:   And why do you think you can defeat a gun?
>
> "[PETITIONER]:   (No verbal response.)

"THE COURT:   I'm not trying to be flip. I want to tell you, I'm extremely concerned about someone who is consistently angry, always has a gun on his person, and is blaming you for failures that he perceives.

"[PETITIONER]:   But it's really hard to explain. I myself do not understand why he did that to [child]. Usually he's very good about it. He's good about keeping his gun—he's a gun instructor. So, I would never think of him to do that, but when I asked him why would you do that, he never gave me [an] answer. So, I don't know how to answer to you."

Although most of the events that petitioner described occurred more than six months before the petition or at an unknown time, the court asked petitioner whether "any of this throwing" occurred in the six months preceding the initial FAPA petition, and she responded, "Yes."

The trial court found that all elements were met and entered an order continuing the FAPA order. In an oral ruling, the court described the abuse that occurred in the last six months:

"[M]aking her afraid of being physically hurt, in terms of [respondent's] conduct and behavior, not solely the gun but making remarks about 'should have killed myself,' being angry, yelling, wearing a gun at all times, throwing things, knocking things, and swiping things off the table, and I find her credible on that. That is something that makes a reasonable person afraid.

"* * * * *

"I find her fear reasonable. And because of that, and because it's a credible threat, I am going to keep the order in effect."

The court then issued the written FAPA order, which provides in part:

"The Court heard the testimony of the parties, neither of whom called witnesses other than themselves. By [petitioner's] testimony, [respondent] is controlling and often angry, wears a firearm at all times in the house, has pulled it out of its holster to make threats including to injure himself, has thrown and swiped items away when upset, and consistently yells and intimidates [petitioner] and Child. [Petitioner] is more credible than [respondent] overall, who admits bad judgment by holding the gun to his throat and

making suicidal remarks in front of the child but otherwise discounts or disagrees with [petitioner's] testimony in substantial part."

This timely appeal follows.

On appeal, respondent contends that the trial court erred in finding that abuse occurred within the six months preceding the filing of the petition. Respondent argues that the events described in the record do not rise to the level of "abuse" as set forth in ORS 107.705(1)(b). Respondent notes that most of the incidents that petitioner described did not occur within the six months preceding the petition, and the only testimony as to a recent event described only that respondent threw an item and did "not say what was thrown or where it was thrown." Finally, respondent acknowledges that petitioner testified to concerning events but argues that, because she testified that she is not physically afraid of him, then the evidence does not support a FAPA order. Petitioner did not file an answering brief and therefore waived appearance on appeal. *See* ORAP 5.60 (providing that, "[i]f the respondent files no brief, the cause will be submitted on the appellant's opening brief").

We begin with the applicable governing law. Under ORS 107.716(3)(a), a trial court may continue a FAPA order if the court finds that:

"(A)   Abuse has occurred within [180 days];

"(B)   The petitioner reasonably fears for the petitioner's physical safety; and

"(C)   The respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child."

Abuse, as relevant here, is defined as "[i]ntentionally, knowingly or recklessly placing another in fear of imminent bodily injury." ORS 107.705(1)(b). Fear is an objective standard and involves considering the totality of the circumstances. *K. G. G. v. Lucarelli*, 310 Or App 835, 836, 486 P3d 860 (2021).

We have reviewed the record and conclude that there is sufficient evidence to support the trial court's finding of "abuse." The record contains evidence that respondent has engaged in conduct within the six months preceding the

petition that would put a reasonable person in fear of imminent bodily injury, including throwing items and always wearing a firearm in the house. Although petitioner did not elaborate on the specific incidents where respondent threw items within the six months before the petition, petitioner's description of prior incidents, including with the television, phone, and dishes, creates a reasonable inference as to the nature of the throwing conduct that occurred within the six-month timeframe. The court could use both the context and history of the parties' interactions to help determine what is a reasonable inference under the circumstances. Further, although respondent notes that petitioner testified that she is not physically afraid of respondent, petitioner also testified that respondent's conduct is "very intimidating and scary" and that she is "afraid he is going to do something more damaging." Moreover, the court did not have to credit petitioner's testimony that she is not physically afraid of respondent, and the court was not required on this record to find that no reasonable person would have feared imminent bodily injury from respondent's conduct.

Accordingly, given the totality of the circumstances—including the context of respondent pointing the firearm at himself in front of their child and threatening to kill himself, the prior incidents of throwing items, and his pattern of yelling and screaming such that petitioner described respondent's conduct as intimidating and scary—we conclude that there is sufficient evidence to support the trial court's determination that, by carrying a firearm around the house and throwing items, respondent intentionally, knowingly, or recklessly placed petitioner in fear of imminent bodily injury within the six months preceding the petition. *See Lefebvre v. Lefebvre*, 165 Or App 297, 301, 996 P2d 518 (2000) (explaining that an "overt threat is not required in order to authorize the issuance of an abuse prevention restraining order"); *see also D. R. M. v. Woods*, 294 Or App 135, 140, 430 P3d 193 (2018) (explaining that the totality of the circumstances determination includes conduct that occurred outside the 180-day timeframe). Therefore, the court did not err in continuing the FAPA order.

Affirmed.