78 April 1, 2026 No. 234

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

M. Z.,
*Petitioner-Respondent,*

*v.*

Shane HORNING,
*Respondent-Appellant.*

Umatilla County Circuit Court
23PO10920; A183521

Eva J. Temple, Judge.

Argued and submitted February 26, 2025.

George W. Kelly argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Affirmed.

## POWERS, J.

In this domestic relations case, father appeals from a Family Abuse Prevention Act (FAPA) restraining order that was continued after a contested hearing. Father asserts, in a single assignment of error, that the trial court erred in continuing the FAPA order because, in his view, there was legally insufficient evidence to support its findings that there had been abuse, that mother reasonably feared for her physical safety, and that father posed a credible threat to mother's safety. We conclude that the record is sufficient to support the continuation of the FAPA order because, as explained below, the context of the parties' interaction matters. Accordingly, we affirm.

Father requests that we exercise our discretion to review *de novo*. Because this case does not meet our established criteria, we decline to do so. *See* ORS 19.415(3)(b); ORAP 5.40(8)(c) (explaining that we exercise our discretion to review *de novo* "only in exceptional cases"); ORAP 5.40(8)(d) (outlining a nonexclusive list of criteria relevant to the exercise of discretionary authority to review *de novo*). Therefore, we are bound by the trial court's factual findings if they are supported by any evidence in the record, and in the absence of express factual findings, we presume that the court made findings consistent with its ultimate judgment. *J. V.-B. v. Burns*, 284 Or App 366, 367, 392 P3d 386 (2017). We review the trial court's legal conclusions for legal error. *Id*. We begin by setting out some of the factual background with our standard of review in mind.

Mother and father were in a long-term domestic relationship, co-owned a family home, and have a minor son together, who was a teenager at the time mother obtained the restraining order. Mother also has an adult disabled child from a prior relationship. Mother had previously obtained a restraining order against father, which was dismissed after a hearing. By the time of the FAPA hearing at issue here, father had filed two separate civil cases to determine custody of their minor child and division of assets and debts from their long-term relationship, and father had not lived in the home for several months. Mother continued to live in the home with her adult child.

One day in September 2023, father and their son showed up at the home without notifying mother that they were coming. Father looked around the outside of the house and left. He returned later with their son and a police officer and pounded on the door, telling mother that he "can break in if he wants to, because the Pendleton police said that he could." Mother heard him "violently shaking" the trailer door that was parked adjacent to the house, "where he has weapons there. He has a machete, he's got hunting knives, he's got all kinds of other weapons in there." Father also tried to enter the house, and the police officer knocked on the door, though mother did not open the door. Eventually father, their son, and the officer left.

Two days later, mother's attorney sent an email to father's attorney and advised that they would agree to arrange a time for father to retrieve personal items and requested a list of personal items that father wanted to retrieve. Father's attorney responded, explaining that her client would be at the house at 5:00 p.m. the next day to pick up his personal property. That response, however, did not specify what personal property father was requesting. Because mother's attorney could not reach father's attorney to advise that that arrangement was unacceptable, mother packed all of father's and son's clothing, shoes, and toiletries into boxes—54 boxes, according to father—and placed them in the driveway. Mother had two friends with her because she was afraid of what father would do when he showed up at the home.

When father arrived, he did not look in the boxes or load them into his vehicle. Instead, father repeatedly demanded entry into the house, which mother denied. In response, father began to attempt to break into the house by kicking down doors. Mother called the police, and Officer Williams came to the residence. The trial court found that Williams would not "protect [mother] from [father] because he was shown the letter demanding personal property written by [father's] attorney and was told that [mother] had agreed to this time and place for retrieval of property." Father knew this to be untrue—the court further found—but did not tell the officer as much. Williams stood by as

father and son kicked in the back door into the garage, breaking the door, the frame, and the lock. Father then kicked in the locked door from the garage into the house, damaging the door so that it was no longer effective. Father then kicked in the locked door to the laundry room where the parties had their gun safe. Father could not open the safe because mother had removed the keypad, but he loaded the safe into his vehicle.

After breaking three doors, father went upstairs and kicked in the locked door to mother's bedroom. Mother had added locks to interior doors when she obtained the first restraining order. Throughout this time, mother's friends had tried to calmly direct father to take his personal property, which was packed and sitting in the driveway. He refused and went to a second gun safe in mother's closet and removed a handgun from the safe. He placed the gun in his pocket in front of mother. While at the house, father told her that he had every right to be in the house because he owned it too and that he could come back anytime he wanted. After retrieving the firearm, he told mother that he could start sleeping there again if he wanted and that he would be back. Mother testified that father had his hand on the pocket with the gun, patting it throughout the event.

After that event, mother sought a FAPA restraining order. After being served with the restraining order, father requested a hearing to contest it. At the contested hearing, mother testified that father is "intimidating, he makes me afraid[]" and that his conduct was violent. She also testified that she had not had police support during prior incidents at the home with father and their son, and she had a negative prior interaction with Williams specifically, who had told her she was being childish. She testified that she did not "trust the Pendleton police to protect me" and has "been told by the Pendleton police that I need to quit calling because they're not going to come to the house anymore. So I have had no support from the Pendleton police." With respect to the September incident, mother explained that she "couldn't count on [Williams] to protect me in any way if anything happened," because he told her that he was not going to go into the house.

At the end of the contested hearing, the trial court noted that it was going to take the case under advisement, noting that there was some case law it wanted to review. The court then issued the written FAPA order, including that, "[t] his case is unusual in the series of events, * * * but after careful consideration of the facts presented, the court finds that [mother] met her evidentiary burden," ultimately concluding that father's behavior was a threat to mother and that it was reasonable for a person in mother's circumstances to fear for her safety. The court found that father had access to his personal belongings because they were packed and placed neatly in the driveway but that he chose to break down doors so that he could take the guns and suppressors from the home. The court explained that it was possible that father was within his rights as a homeowner to destroy his home doors but that it was not clear he was acting within any agreement of the parties, and he had not lived there for over three months. The court observed that, although mother and her friends attempted to pack everything that was clearly father's and their son's so that the interaction could be avoided and mother could maintain some sense of security in her home, father chose to unilaterally destroy jointly owned property to obtain a loaded pistol and then stated an intent to return. The court concluded that mother took that as a threat, and so would any other person after having all the doors from the garage to bedroom rammed open. The court also noted that both parties knew that the pistol was loaded and referred to the pistol later as a loaded gun. Father timely appeals the court's decision to continue the FAPA restraining order.

On appeal, father contends that the trial court erred in finding that there had been "abuse," that mother reasonably feared for her physical safety, and that father poses a credible threat to mother's safety. Mother does not appear on appeal.

We begin with the applicable governing law. Under ORS 107.716(3)(a), a trial court may continue a FAPA order if the court finds that:

"(A)   Abuse has occurred within [180 days];

"(B)   The petitioner reasonably fears for the petitioner's physical safety; and

"(C)   The respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child."

Abuse, as relevant here, is defined as "[i]ntentionally, knowingly or recklessly placing another in fear of imminent bodily injury." ORS 107.705(1)(b). Fear is "judged by an objective standard" and involves considering the totality of the circumstances. *K. G. G. v. Lucarelli*, 310 Or App 835, 836, 486 P3d 860 (2021).

On appeal, father contends that the trial court erred by determining that there was abuse as required by ORS 107.716(3)(a)(A). In support, father asserts that there was no evidence to support a finding that the firearm was loaded or that the parties knew that the firearm was loaded, which he maintains is a key finding and that the error is not harmless. Father also argues that mother did not indicate what kind of bodily injury that she was afraid of or how that injury was imminent.

After reviewing the record, although we agree with father's argument that there is no evidence to support the finding that the firearm was loaded or that the parties knew the firearm was loaded, we ultimately conclude that there is sufficient evidence to support the trial court's finding of "abuse." The record contains evidence that father engaged in conduct within the six months preceding the petition that would put a reasonable person in fear of imminent bodily injury, including breaking through doors to get into the house and breaking into mother's bedroom to obtain firearms, placing a firearm in his pocket in front of mother, and then telling mother that he could return whenever he wanted and that he would be back while having his hand on that pocket. Further, mother testified that "he's intimidating, he makes me afraid," that his behavior was violent, even with police present, and that she cannot count on the police to protect her.

Accordingly, given the totality of the circumstances—including the context of father misleading the police to believe that the parties had agreed that he could go inside the home and breaking doors to get inside the home and bedroom, such that mother described father's conduct as violent and that she was afraid—we conclude that there is

sufficient evidence to support the trial court's determination that, by placing a firearm in his pocket in front of mother while stating that he could return any time he wanted, despite whether the parties knew if it was loaded, father intentionally, knowingly, or recklessly placed mother in fear of imminent bodily injury. *See J. E. L. v. Lefebvre*, 165 Or App 297, 301, 996 P2d 518 (2000) (explaining that an "overt threat is not required in order to authorize the issuance of an abuse prevention restraining order"); *V. S. v. Sterba*, 340 Or App 608, 613, 517 P3d 1117 (2025) (concluding that by carrying a firearm around the house and throwing items, father intentionally, knowingly, or recklessly placed mother in fear of imminent bodily injury).

We turn to father's argument that challenges the sufficiency of the evidence to support a finding that father is a "credible threat to the physical safety" to mother. ORS 107.716(3)(a)(C). Father asserts that everything he said at the house on the day in question was true—*i.e.*, he could come back to the house anytime and that he had a legal right to return—but that he did not say that he would return. Father also argues that, because the parties have separated, there is no expectation that they will be in contact with one another, and thus there is no credible threat. We are not persuaded by father's contentions.

A review of the record shows that there is evidence to support the trial court's finding that father was a credible threat. The trial court noted in its decision that father "chose to unilaterally destroy jointly owned property to obtain a loaded pistol and then stated an intent to return. Mother took this as a threat and so would any other rational person after having all the doors from garage to bedroom rammed open." It is undisputed in the record that father kicked in four doors to gain entry into the home and mother's bedroom in an attempt to obtain firearms. There is also evidence that once he put the firearm in his pocket, he told mother he could come back anytime he wanted and that he would be back, drawing attention to the firearm throughout the incident. Furthermore, there is evidence that father allowed Williams to proceed on a misapprehension of the conversation between the parties' attorneys such that Williams was led to believe

that there was an agreement that father could go into the house to get his personal items. Additionally, all of the events that the FAPA order are based upon occurred after the parties separated, and thus the trial court was entitled to conclude that father posed a credible threat despite the fact that the parties were separated at that time. *See M. A. B. v. Buell*, 308 Or App 98, 104-05, 479 P3d 1087 (2020) (concluding that, even though the parties separated, the trial court was permitted to conclude the father represented a credible threat to the mother's physical safety); *Hubbell v. Sanders*, 245 Or App 321, 327, 263 P3d 1096 (2011) (noting that an overt threat of physical violence is not required to prove that the father posed a credible threat).

Lastly, father argues that mother did not reasonably fear for her physical safety. We disagree with that contention. That is, we readily conclude that, for similar reasons described above, there is sufficient evidence for the trial court to conclude that mother "reasonably" fears for her physical safety. *See* ORS 107.705(1)(b) (defining "abuse"); *see also K. G. G.*, 310 Or App at 836 (explaining that "fear" is "judged by an objective standard, considering the totality of the circumstances"). Accordingly, the court did not err in continuing the FAPA order.

Affirmed.